# CHARLESTOWN.

## McGugin *v.* O. R. R. Co.

*(GREEN, JUDGE, Absent.)

Submitted June 18, 1889.—Decided September 14, 1889.

| 33 | 63 |
| 37 | 643 |
| 33 | 63 |
| 40 | 706 |
| 33 | 63 |
| 53 | 202 |

MECHANICS' LIEN—SUB-CONTRACTORS.

A sub-contractor in the second degree, who shows no privity of contract with the owner of the land, on which a building is erected, or with his duly authorized agents, who furnishes material or labors in the erection or construction of said building, can acquire no lien on said lot or building by giving the notice provided for in section 5, c. 75, Code W. Va., within thirty days after the labor was performed or material furnished.

*C. L. Brown* for appellant.

*C. E. Hogg* and *N. C. Prickett* for appellee.

ENGLISH, JUDGE :

A suit in equity was brought and bill filed at July rules, 1887, by E. R. McGugin in the Circuit Court of Jackson county against the Ohio River Railroad Company, a corporation formed and existing under the laws of West Virginia, the Ohio Valley Construction Company, a corporation formed

*On account of illness.

and existing under the laws of the state of Ohio but doing business in the state of West Virginia, S. H. Crick and John Coulston, who did business under the name, style and firm of Crick & Coulston, and J. H. Green for the purpose of enforcing an alleged mechanic's lien against a lot or parcel of land situated near the town of Ravenswood and in the said county of Jackson and State of West Virginia, purchased by said railroad company from one R. S. Brown, and bounded on the west by the Ohio River Railroad, on the north and east by lands of R. S. Brown, and on the south by Sycamore street of said town of Ravenswood, a lot of W. S. Flemming and others, and land of said railroad company, containing in all about six acres.

The plaintiff in his bill alleged, that said Crick & Coulston were the contractors with said Ohio Valley Construction Company for the building of the freight-depot of said railroad, erected and built upon said lot for the uses and purposes of said railroad; that said Crick & Coulston by virtue of their contract with said Ohio Valley Construction Company and in conformity with the terms of the contract between said Ohio Valley Construction Company and said Ohio River Railroad Company, did build and erect said freight-depot on said lot of land owned and belonging to said railroad company as aforesaid; that he was a mechanic and artisan and as such performed work and labor in the erection and construction of said depot and furnished materials therefor by virtue and in pursuance of an agreement made by him with said Crick & Coulston, and in conformity with the terms of said contract between the Ohio Valley Construction Company and said Crick & Coulston, and in conformity with the terms of said contract; that he furnished eighty seven squares of iron roofing at $4.16, amounting to $361.92, 155 feet comb cap for roof, $15.50, and nails and labor putting on comb, $2.75,—aggregating $380.17, upon which there are the following credits, to wit: Cash to F. H. Green, $100.00, cash to E. R. McGugin, $10.00,—aggregating $110.00; leaving a balance, February 8, 1887, of $270.17.

The plaintiff further alleged, that he ceased to labor on and furnish material for said depot on the 15th day of January, 1887, and on the 9th day of February, 1887, he filed

with the clerk of the County Court of said county a just and true account of the amount due him as aforesaid after allowing all credits together with a description of the property intended to be covered by the lien sufficiently accurate for identification, with the name of the owner of said property, which account was sworn to by the plaintiff on the 8th day of February, 1887; and that within thirty days after he had ceased to labor on said building, and within thirty days after the delivery of said materials for said depot, furnished by him as aforesaid, he gave notice in writing to the said Ohio River Railroad Company, which was duly and legally served upon it on the 12th day of February, 1887, and a like notice to the Ohio Valley Construction Company, which was in like manner served on the 10th day of February, 1887, of the amount of his demand, and that he claimed the benefit of the lien created by virtue of chapter 64 of the Acts of the Legislature of West Virginia for the year 1882, and that he had a valid and subsisting lien on said lot of land belonging to said Ohio River Railroad Company, and upon said depot erected thereon and its appurtenances, for his said demand of $270.17 with interest from the 8th day of February, 1887; and that said F. H. Green claimed an interest in said money; and he prayed that he might have a decree for the amount of his said demand with its interest; that it might be declared a lien on said lot of land and said freight-depot and its appurtenances; and that said property might be sold to pay said decree.

The defendant, the Ohio River Railroad Company, demurred to plaintiff's bill, as also did the defendants, Crick & Coulston, which demurrers were disallowed and overruled by the court below, and thereupon the said Ohio River Railroad Company tendered its separate answer, as also did said Crick & Coulston, which answers were ordered to be filed, and the plaintiff replied generally thereto.

A considerable number of depositions were taken in the cause, and on the 12th day of March, 1888, a decree was rendered therein, finding that the plaintiff was entitled to the relief prayed for, ascertaining the amount due from the defendants Crick & Coulston to be $287.90, and holding that said sum is a valid and subsisting lien on the said six acres

of land and the depot erected thereon described in the bill, and directing that, unless the defendants S. H. Crick and John Coulston, who did business under the name style and firm of Crick & Coulston, or some one for them should pay said sum with interest from the date of said decree within thirty days from said date, certain special commissioners therein named should advertise and sell said six acres of land and depot or a sufficient portion thereof to pay and satisfy the said amount upon the terms and in the manner therein prescribed.

From this decree the defendant the Ohio River Railroad Company appealed to this Court.

The first error assigned by the appellant is, that the court erred in disallowing and overruling its demurrer to the plaintiff's bill. The lien claimed and asserted by the plaintiff's bill, if it exists at all, derives its vitality and force from a strict compliance with the statute, under which the plaintiff sought to create it. It is true, that this Court held in the case of *Mayes* v. *Ruffners*, 8. W. Va. 384, that "a mechanic's lien is of statutory creation and can be maintained only by a substantial observance of and compliance with the requirements of the statute;" yet in that case the Court held, that, where the statute required, that the account filed with the recorder must be subscribed by the party seeking to obtain the lien, the statute was not complied with, if said party only subscribed the affidavit appended to said account; and also held, that the name of the owner of the property should be positively designated, if known. At that time the statute required the account to be subscribed by the party seeking the lien, and upon demurrer the failure to so subscribe the account was regarded so material as to vitiate the plaintiff's lien, and from the rulings of this Court in that case it would seem, that by a "substantial observance of and compliance with the requirements of the statute it was meant and intended, that everything required by the statute to be done by the party seeking the lien should be complied with, before the lien would come into existence, and upon a demurrer to a bill asserting such a lien the allegations therein contained must show affirmatively, that the plaintiff has done all, that the statute requires to create the lien, or the demurrer should be sustained.

Again, in the case of *McKnight* v. *Washington*, 8 W. Va. 666, it was held, that under the provisions of the second and fifth sections of chapter 75 of the Code of West Virginia of 1868, where the owner pays the contractor for the erection of a building pursuant to and in accordance with the obligation of his original contract with the contractor, after its completion a party, who furnished materials to the contractor, acquires no lien by giving notice in writing to the owner after such payment of the amount of his demand to said contrator, or that he claims the benefit of the lien created by said chapter, although the notice was given within thirty days after the material was furnished. In such case no lien in favor of the material-men ever attached.

Now under section 5 of chapter 75 of the Code of West Virginia, under which the plaintiff claims, he acquired the lien asserted in his bill, we find, that a person, in order that he may have the benefit of the lien therein provided for, must have been employed to do the work or furnish the material by another, who had contracted with the owner to erect or construct the house or building or any part thereof. The plaintiff however in his bill alleges, that the Ohio River Railroad Company is the owner of the lot, on which the freight-depot was erected; that the Ohio Valley Construction Company contracted with said owner to erect and construct said depot; that Crick & Coulston contracted with the Ohio Valley Construction Company for the construction of said freight depot on said lot for the uses and purposes of said railroad; and that the plaintiff being a mechanic and artisan performed work and labor in the erection and construction of said depot and furnished materials therefor by virtue and in pursuance of an agreement made by him with said Crick & Coulston in conformity with the terms of the contract between said Ohio Valley Construction Company and Crick & Coulston and in conformity with the terms of said contract between said Ohio Valley Construction Company and said Ohio River Railroad Company. This statement of the plaintiff's case however does not show, that he contracted with another, who had contracted with the owner, but it does show, that he contracted with Crick & Coulston, who do not appear from any allegation or statement in his

bill to have made or entered into a contract or agreement of any character with the owner. The plaintiff by the allega- tions of his bill does not show himself entitled to a lien un- der the second section of said chapter, because by that sec- tion the work must be done or material furnished by virtue of a contract with the owner thereof or his agents or in pursuance of an agreement with such contractor (meaning one who has contracted with the owner) in conformity with the terms of the contract with such owners or agents to do or perform some labor or work, or furnish some material in the erection or construction of a house or other building in this State, in order that he may have a lien, *etc.* But it nowhere appears on the face of said bill, that any contract or agree- ment ever existed between the Ohio River Railroad Com- pany and Crick & Coulston, or that they were the agents of said railroad company for any purpose; and, the contract having been made by the plaintiff with said Crick & Coul- ston, it does not appear to me to be material, whether said contract conforms to the one made between the Ohio Valley Construction Company and said railroad company or not; but, in order that a lien might have been acquired under said second section, it should have been alleged, that the plaintiff contracted with the owner of said lot or its agents, or that he performed labor or work or furnished material to one, who was a contractor with the owner, and in con- formity with the terms of the contract with such owner or agents.

Phillips on Mechanics' Liens, p. 75, § 49, says : "Although the sub-contractor and material-man have been secured in many of the states either a lien on the property or a right of action against the owner to recover any balance due the con- tractor on his contract, yet these privileges have been more rarely extended to sub-contractors in the second and third degree. The plainest expressions of law must be adduced to entitle them to the remedy. *Kirby* v. *McGarry*, 16 Wis. 68. Statutes which are opposed to common right, and confer special privileges upon one class of community not enjoyed by others, should receive a strict construction, and parties claiming its benefits must bring themselves clearly within its provisions. *Bridge Co.* v. *Railroad Co.*, 72 Ill. 506.   *   *

* To allow the right of lien to a sub-contractor in the third or fourth degree or beyond would be impracticable, as well as imposing hardships, which would follow in many supposable cases. If the right to the lien can be extended indefinitely, then it is very obvious there would be no safety in contracting for the erection of a building, and no prudent man would do it. Again, where 'every sub-contractor or other person who shall, in pursuance of the purposes of the original contract between the owner and the original contractor perform any labor,' etc., shall have a lien, the lien does not extend to a sub-contractor of a sub-contractor. A law therefore which extends the lien to a sub-contractor, does not take in a party who stands to the owner in the position of a sub-contractor in the second degree." See also *Harbeck* v. *Southwell,* 18 Wis. 418.

Under the Illinois statute it is provided : "Every person, who shall hereafter as sub-contractor or material-man or laborer furnish to any contractor with any such railroad corporation any fuel, ties, materials, supplies or any other article or thing, or who shall do and perform any work or labor for such contractor," etc., in conformity with the terms of his contract with such railroad company, shall have a lien on the property of the railroad company. And in the case of *Railroad Co.* v. *Watson,* 85 Ill. 531, the court in construing said statute holds, that the lien on the railroad does not extend beyond a sub-contractor; and in the case of *Newhall* v. *Kastens,* 70 Ill. 156, the Supreme Court of that state holds : "The mechanic or workman performing labor, or party furnishing materials, for a sub-contractor, is not entitled under the statute to any lien; the lien given does not extend further than to a sub-contractor." In the case of *Rothgerber* v. *Dupuy,* 64 Ill. 453, said court holds : "The act of 1869, which gives a sub-contractor performing labor or furnishing materials for the erection of a building a lien thereon for the value of such labor, will not be extended by construction so as to give its benefits to a sub-contractor of a sub-contractor."

Under a statute, which requires the contract to be made with the owner thereof or his agent or any person, who, in pursuance of an agreement with any such contractor, shall in conformity with the terms of such contract perform any

labor, *etc.*, Phillips on Mechanics' Liens, p. 126, says : "A sub-contractor claiming under that statute must show the existence of a contract," and such an allegation is necessary because the statute expressly says "the aggregate of the liens in favor of all such persons shall not exceed the amount due to the person employing them from the owner at the time the notice is given," unless notice has been given, as therein provided, before doing the work, which notice is evidently intended to enable the owner to hold back money in his hands and protect himself. This portion of section 5 is an *addendum* to section 5 as it was in the Code of 1868, requiring the party, who as a sub-contractor performs work or furnishes material, if he would claim beyond the amount due from the owner for said work or material, to give the notice prescribed by statute before doing any work or furnishing any material.. This *addendum* merely prescribes a mode, by which the sub-contractor may have a lien for more than may be due from the owner to the party, with whom he contracts, which mode does not appear to have been resorted to in this instance.

In the case of *McKnight* v. *Washington,* 8 W. Va. 666, sections 2 and 5, c. 75, Code of West Virginia of 1868, have been considered by this Court ; and in that case it was held, as hereinbefore stated, that no lien was acquired by giving notice in writing to the owner within thirty days after the work was done or material furnished, where the owner had paid the contractor in accordance with his contract. Under the statute, as it then read, and before the provision was inserted requiring the sub-contractor to give notice before performing the work or furnishing the materials, if he wished to claim beyond the amount due from the owner to the contractor, this Court in said last-named case (page 671,) says : "I think, under a proper construction of the said second and fifth sections of said chapter 75 of the Code, the material-man is bound to take notice of the contract between the 'owner' and the 'contractor,' not only as to the materials, but as to the price to be paid by the owner for the construction of the house or building, and the time or times the same is to be paid by the owner."

It is an elementary principle of equity, that every fact

essential to the plaintiff's title to maintain the bill and obtain the relief must be stated in the bill. *Parker* v. *Carter*, 4 Munf. 273; *Eib* v. *Martin*, 5 Leigh, 141; Sand. Eq. §§ 10, 16; also § 17. "The bill must show sufficient matters of fact *per se* to maintain the case, and, if it be defective in this, the bill will be dismissed." Mitf. Eq. Pl. 125; Sand. Eq. §§ 12, 18. "In all cases the bill must show that the parties defendant are in some way liable to the plaintiff's demand, or that they have some interest in the subject of the suit, and it must further show that there is such a privity between the parties defendant and the plaintiff as entitles him to sue them."

Now, the plaintiff in this case not having shown by the allegations in his bill contained, that he was employed to work or furnish materials for any house or building or any part thereof by another, who had contracted with the owner thereof to construct or erect the same or any part thereof, he has not brought his case within the express provisions of the statute requisite to constitute a mechanic's lien in his favor; but on the contrary it appearing by allegations of his bill, that he was a sub-contractor in the second degree having no privity of contract with the owner of the property sought to be subjected or its agents, the court below committed an error in not dismissing the plaintiff's bill on demurrer.

For the reasons hereinbefore indicated the decree complained of must be reversed, and the plaintiff's bill dismissed, with costs to the appellant.

REVERSED. DISMISSED.