NEWGASS et al. v. ATLANTIC & D. RY. CO., (CENTRAL CAR-TRUST CO. et al., Interveners.)

(Circuit Court, E. D. Virginia. June 13, 1893.)

1. RAILROAD COMPANIES—SUPPLY LIENS—ROLLING STOCK.
   Code Va. § 2462, provides that a conditional sale of rolling stock to a railroad company, where legal title is reserved to the vendor until the purchase money is paid, shall be void as to creditors and bona fide purchasers of the vendee unless the contract is recorded as therein required, and "each locomotive and car * * * be plainly and permanently

marked with the name of the vendor on both sides thereof, followed by the word 'owner.'" *Held*, that a lien for the purchase money of rolling stock reserved by contract under this section is in no wise inconsistent with the existence of a lien under section 2485, which gives to all who furnish supplies necessary to the operation of a railway "a prior lien on the franchise, gross earnings, and all the real and personal property" of the road, upon condition that the claim be recorded as required by section 2486.

**2.** SAME—CAR CONTRACTS.

The contract under which cars were furnished to a railroad company styled itself a "lease," and provided for payment of the purchase money in monthly installments, with the right in the vendor, on default, to take possession of the cars, and sell, returning any surplus after payment of the outstanding notes to the vendee. The vendor put his name on the cars as owner, and recorded the contract as required in the case of conditional sales. *Held*, that the cars were "furnished," within the meaning of Code Va. § 2485, declaring a supply lien in such cases, and nothing done by the vendor herein amounted to a waiver of such lien.

**3.** SAME—MORTGAGE CREDITORS—PRIORITIES.

As to creditors secured by a mortgage on all the property of the road before the cars were furnished, the sellers of the cars are entitled to a prior lien thereon, whether their contracts of claims of liens were properly recorded or not, for the mortgage only attaches to the cars as after-acquired property, and is therefore subject to all existing equities, whether there is notice to the mortgagees or not.

**4.** SAME—SUPPLY LIENS—CLAIM—TIME OF FILING.

Code Va. § 2486, provides that no person shall be entitled to the railroad supply lien given by the preceding section "unless he shall within six months after his claim has fallen due" file in a specified office a prescribed memorandum of his claim, to be recorded. *Held*, that the time of furnishing the supplies is immaterial, so far as concerns the claim, and where they are to be paid for in installments the claim must be filed and recorded within six months after the last installment falls due.

**5.** SAME—INVALID ACT—REVIVAL.

Prior to the furnishing of some of the cars an act had been passed giving a supply lien, but it was held unconstitutional because its title did not cover its object. The laws of Virginia were then codified, including this law, and the act adopting the Code was passed before the cars were furnished, but it did not go into effect until thereafter. *Held*, that there can be no lien as to these cars, since there was no valid act in existence, creating such a lien, when they were furnished.

**6.** SAME—TIME OF FILING CLAIMS—SUSPENSION.

Where a creditor's bill is filed against a railroad, and the court refers the case to a commissioner to determine the claims, and their priorities, this suspends the running of the six months within which the claim of lien for supplies is required to be filed by Code Va. § 2486. Seventh Nat. Bank v. Shenandoah Iron Co., 35 Fed. Rep. 436, followed.

**7.** SAME—SUPPLY LIEN—MEDICAL ATTENDANCE.

Medical services rendered and board furnished by a hospital to an employe of a railroad company injured and disabled in its service are not "supplies necessary for the operation of a railroad," within Code Va. § 2485, giving a lien for supplies.

In Equity. Intervention of the Central Car-Trust Company and others in the suit of B. Newgass & Co. against the Atlantic & Danville Railway Company. On exceptions to report of commissioner. Exceptions sustained in part, and overruled in part.

Evarts, Choate & Beaman and Legh R. Page, for Newgass & Co.

Alexander & Green and Legh R. Page, for Mercantile Trust Co.

E. B. Thomason and Murdaugh & Marshall, for Atlantic & D. Ry. Co.

Richard Walke, for receiver.

Samuel Dickson, R. C. Dale, Joseph S. Clark, and Robt. M. Hughes, for Car Trust creditors.

Before GOFF, Circuit Judge, and HUGHES, District Judge.

HUGHES, District Judge. This is a contest for priority between the bondholders, claiming also as execution creditors, as to about $360,000, and the car-trust claimants, asserting liens upon the cars furnished by them, and also upon the other property of the defendant company, for about $350,000, and other supply creditors. The defendant company is a railway corporation chartered by the legislature of Virginia. It was, in its inception, a narrow-gauge road, with its terminus at Claremont, on James river. Subsequently, it was decided to make it a standard gauge, and extend it to Portsmouth, in one direction, and Danville, in the other. On September 7, 1887, it executed a mortgage to the Mercantile Trust Company of New York as trustee to secure the payment of bonds to be issued at a certain rate per mile as the road was constructed, amounting in the aggregate to $5,250,000. Prior to May 1, 1888, this mortgage had been admitted to record in but five counties, viz. Sussex, Greenville, Surry, Nansemond, and Norfolk, and prior to that date only $1,582,000 of the total bonds authorized by the mortgage had been issued. During the years 1888 and 1889 the company, finding additional rolling stock necessary on account of its increased mileage, purchased it from various car-equipment companies. It was purchased under the usual car-trust contracts, which speak of the transaction as a lease; and provide that payment shall be made in monthly installments of small amounts, extending over long periods; that if default be made the vendor may retake possession and sell, accounting to the vendee for any balance due after the payment of the outstanding notes; and, further, that the company shall own the cars after the payment of all the notes, on payment of a nominal consideration. Only one of these contracts—that of the New York Equipment Company—was dated prior to May 1, 1888. These contracts, with the exception of that of Humphreys & Sayce, were not recorded in the clerk's office of Portsmouth until April, 1891. Some of them do not seem to have ever been recorded there. Some of them were recorded with the board of public works prior to 1891; others, not at all. The claim of Humphreys & Sayce is the only one which seems to have been recorded both in Portsmouth and with the board of public works prior to 1891. These car-trust creditors, in addition to recording their contracts as described above, took steps also to mature a lien as supply creditors under the provisions of sections 2485 and 2486 of the present Code of Virginia. This they did at various times during the early part of 1891. The railroad enterprise was not a successful one. The receipts were not sufficient to pay expenses and interest charges. The largest holders of its bonds were B. Newgass & Co., of London. On January 2, 1891, the company, by R. M. Stuart-Wortley, as attorney in fact, confessed judgment in favor of B. Newgass & Co. for about $360,000,

and execution was at once issued thereupon, and returned nulla bona. Thereupon, on January 3, 1891, B. Newgass & Co. filed a bill in this court reciting this confessed judgment; reciting that there is no property on which the execution can be levied; reciting that it was for moneys advanced to pay employes, and other charges; reciting that they hold $3,000,000 of the bonds, that the company is insolvent, and cannot pay its interest, or even its operating expenses; and praying for a receiver, for the payment of the amount due it, and for general relief. The company answered, admitting the allegations of the bill, and, by an order entered on the same day, receivers were appointed. This decree further provided that all applications for interlocutory relief should only be made after 10 days' notice to parties adverse in interest. On January 7, 1891, the Mercantile Trust Company filed a petition submitting itself to the jurisdiction of the court, and praying a sale under the mortgage. On March 17, 1891, an order was entered, referring to a commissioner the questions arising as to the relative priorities of liens on the road. By a subsequent order, F. M. Whitehurst, Esq., was substituted as commissioner in place of M. F. Pleasants, Esq., on account of the ill health of the latter. On April 16, 1891, the plaintiffs issued an alias execution on their judgment, and on May 8th obtained an ex parte order from the court, directing that the execution should be taken and considered as actually levied on the property named in a schedule attached to the order, which enumerated the rolling stock which had been furnished to the company by the car-trust claimants. Thereupon the marshal returned the execution as by said order directed. In addition to the liens matured by the car-trust creditors under sections 2485 and 2486 of the Code, various other supply creditors matured liens, and asserted them before the master. After a very thorough and intelligent examination the master filed his report on November 30, 1891, passing upon the questions referred to him. He found that the first lien upon the property was the bonds issued under the mortgage prior to May 1, 1888, but that this was a prior lien only upon the property of the company which was in the counties of Sussex, Surry, Greenville, Nansemond, and Norfolk prior to May 1, 1888, not including the rolling stock. He found the next lien to be the supply liens, including those matured by the car-trust creditors, and that these were liens upon the entire property of the company, including the rolling stock, thus making them a first lien upon the rolling stock, and everything else except the limited property in the above-named counties on May 1, 1888. He found that the next lien was the mortgage in the other counties, but subject to the lien of the judgment and execution of Newgass & Co. in those counties where the mortgage was recorded subsequent to January 2, 1891. In reference to the lien reserved in the car-trust contracts, he found that, as against the mortgage, it was a lien on the rolling stock, whether properly recorded or not, as the mortgage only vested upon it as after-acquired property. He found that the contract of Humphreys & Sayce was recorded seasonably and properly, but that the others were not properly recorded, and hence

that the execution lien of Newgass & Co. took precedence of the lien reserved in the contracts. To that part of the report allowing the car-trust creditors a lien under sections 2485 and 2486 of the Code, and holding that they had not waived it, B. Newgass & Co. and the trustee excepted. To that part holding the execution to be a prior lien to that reserved in the contracts, the car-trust creditors excepted. Other exceptions were filed, which it is unnecessary to mention. The main questions discussed at the oral argument and in the briefs are whether the car-trust creditors can claim as supply creditors under sections 2485 and 2486 of the Code, and whether the execution lien of Newgass & Co. takes precedence over the lien reserved in the contracts of conditional sale of the rolling stock.

The law of Virginia on the subject of the liens under consideration is as follows:

"Sec. 2462. Reservation of Title to Goods and Chattels Sold to be Void as to Creditors and Purchasers, unless in Writing and Recorded. Every sale or contract for the sale of goods or chattels, wherein the title is reserved until the same be paid for in whole or in part, or the transfer of the title is made to depend on any condition, and possession be delivered to the vendee, shall be void as to creditors of, and purchasers for value without notice from, such vendee, unless such sale or contract be evidenced by writing executed by the vendor, in which the said reservation or condition is expressed, and until and except from the time the said writing is duly admitted to record in the county or corporation in which said goods or chattels may be, if said goods and chattels consist of locomotives, cars, or other rolling stock, equipments, or personal property of any description, to be used in or about the operation of any railroad, until and except from the time the said writing is duly admitted to record in the clerk's office of the county or corporation court of the county or corporation wherein the principal office in this state of the company operating the railroad is located, and a copy of said writing be filed in the office of the board of public works, and each locomotive, car, or other piece of the rolling stock be plainly and permanently marked with the name of the vendor on both sides thereof followed by the word 'owner.'"

"Sec. 2485. Lien of Employes, &c., of Transportation Companies, &c., on Franchises and Property of Company. All conductors, brakesmen, engine drivers, firemen, captains, stewarts, pilots, clerks, depot or office agents, storekeepers, mechanics, or laborers, and all persons furnishing railroad iron, engines, cars, fuel, and all other supplies necessary to the operation of any railway, canal, or other transportation company, or of any mining or manufacturing company, chartered under or by the laws of this state, or doing business within its limits, shall have a prior lien on the franchise, gross earnings, and on all the real and personal property of said company which is used in operating the same, to the extent of the moneys due them by said company for such wages or supplies; and no mortgage, deed of trust, sale, hypothecation, or conveyance, executed since the twenty-first day of March, eighteen hundred and seventy-seven, shall defeat or take precedence over said lien: provided, that if any person entitled to a lien, as well under section twenty-four hundred and seventy-five as under this section, shall perfect his lien given by either section, he shall not be entitled to the benefit of the other.

"Sec. 2486. How Perfected; How Enforced. No person shall be entitled to the lien given by the preceding section, unless he shall, within six months after his claim has fallen due, file in the clerk's office of the court of the county or corporation in which is located the chief office in this state of the company against which the claim is, a memorandum of the amount and consideration of his claim, verified by affidavit, which memorandum the said clerk shall forthwith record in the deed book and index the same in the name of the said claimant and also in the name of the company against which the claim is. Any such lien may be enforced in a court of equity."

If the car-trust creditors can claim as supply-lien creditors under the last two sections, then the relative priority of the execution and contract lien ceases to be a practical question, except as to the New York Equipment Company, since the two sections give them a first lien, not only on the rolling stock itself, but on the bulk of the other property of the defendant company. Accordingly, the counsel for the bondholders have strenuously argued against the existence of this lien. Briefly stated, their position is that the right reserved under the contracts, and by virtue of section 2462 of the Code, is, by nature and of necessity, inconsistent with the right to mature a lien under sections 2485 and 2486; that under the contract lien the vendor marks the cars as owner, retains title to them, reserves the right to retake them; and hence that a car-trust creditor who takes this course for his protection does not "furnish" the cars to the company, in the sense of these latter statutes, and cannot assert a lien under them. In other words, they contend that the two remedies are inconsistent; that the car-trust creditor must elect between the two; and that, having made his election, he must stand by it. They follow up this premise by maintaining that the car-trust creditor, by attempting to record his contract, elected to rely upon it, and thereby forfeited his right to claim under the supply sections; and that by not properly recording it he lost his contractual right as well. The car-trust creditors contend that there is nothing inconsistent in claiming under both. There is nothing in the Virginia statutes themselves indicating any legislative intent to limit the vendor of rolling stock to a single security, unless it arises, as is argued, from the nature of the transaction. On the contrary, so far as the language of the statutes themselves may affect the question, the implication is the other way, for the supply section expressly provides that one who matures a lien under section 2475 (the ordinary mechanic's lien) cannot mature a lien under section 2485. This indicates that the question of election was in the legislative mind; and the omission of such a provision as to section 2462 is persuasive proof that no such election, as between those two securities, is required.

The argument of bondholders' counsel, to the effect that these liens are inconsistent from their very nature, is based on the idea that in the contract lien the vendor is treated as owner, styling himself as such on plates attached to the cars themselves, whereas the supply section applies only to cars as to which the ownership vests in the company. But it is a mistake to suppose that under the contract section the vendor is absolute owner. He may be the holder of the legal title, but this is a court of equity, which regards the substance, and not the form. Such a court will gather its idea of the transaction, not from a car plate, but from the contract between the parties. That is the best evidence of the character of ownership. The contract shows that this ownership is of the most qualified nature, and is but a security for the purchase price. If the ownership is as the argument assumes, the car creditor would have the right, when a note became past due, to take absolute possession of the cars, even though it was for the

last one in the contract, representing an insignificant proportion of the price. The contract, so far from allowing this, requires the car creditor, in the event of default, to sell the cars, and account for the surplus to the railroad company, if any remains after the satisfaction of the outstanding notes. These contracts have uniformly been treated in courts of equity as a mere security for the purchase price, and certainly no presumption of waiver can be drawn from the act of a party in affixing his name as owner to a car, when his contract required it, and the statute required it. As all the provisions of such a contract cannot well be put upon such a plate, this action, if it indicates anything at all, merely indicates an intention to assert such a title of ownership as the contract specifies. Hence, such acts are in no wise inconsistent with a furnishing of cars to the company under the supply section. As a matter of fact, this company has had these cars in constant use. Without them, it could have earned nothing. Since the receivership, it has paid nothing for their use; and it is a narrow construction of the statute to say that they have not been furnished to the company.

If there is nothing in the nature of the transaction itself, it is equally clear that there are no reasons of policy, which would limit a car creditor to the assertion of a single security. When a new railway company reaches that stage at which it wishes rolling stock, it is specially important for the success of the enterprise that it should be able to hold out the best inducements in the way of ample security in exchange for a long time. It has probably already exhausted its funds and credit in construction, and without rolling stock the enterprise will come to naught. To limit the car creditor to the security of the cars themselves is to force him to see his security rapidly deteriorate from use, or disappear entirely in accidents; thus compelling him to require a comparatively large cash payment, and notes maturing on comparatively short time. To limit him to his supply lien is to make him see others divide with him the proceeds of his cars, and put him at the mercy of an improvident management. In the absence of authority, the equity of the car creditor would seem so strong as to call for a decision in his favor. He is the more entitled to such a decision in view of the case of Chicago & A. R. Co. v. Union Rolling-Mill Co., 109 U. S. 703, 3 Sup. Ct. Rep. 594, which is conclusive in his favor. We therefore hold that the car creditor has the right to assert both his liens, if he has them, and that the assertion of one is not a waiver of the other.

The question then remains whether the car creditor has a lien under section 2485, and, if so, to what extent. The first law in Virginia which gave such a lien was enacted on March 21, 1877, (Acts 1876-77, p. 188,) and it was amended by the act of April 2, 1879, (Acts 1878-79, p. 352.) These acts were declared invalid, in so far as they attempted to give a lien for supplies, in the case of Fidelity, etc., Safe-Deposit Co. v. Shenandoah Val. R. Co., 86 Va. 1, 9 S. E. Rep. 759, for the reason that they did not express their object in their titles. Subsequent to that decision the codifica-

tion of the laws of Virginia was undertaken. The act adopting this codification was approved on May 16, 1887, but it was not to go into effect till May 1, 1888. Either at the date of this act, or at the date when it went into effect, the statute giving this supply lien became valid, and the objection to the preceding acts ceased. After that any one who bought bonds of a Virginia railroad did so with the constructive knowledge that those who furnished supplies to the railroad were entitled to priority of payment. Inasmuch as the only defect of the previous acts was their failure to give notice by their titles that such a lien could arise, much might perhaps be said to sustain the position that they became valid after the date of the act adopting the new Code. However that may be, it is certain that they became valid on May 1, 1888, the day when it went into effect, and violated the obligation of no contract, except as to bonds already issued, secured by a mortgage duly recorded. Hence, the finding of the master that only the bonds issued before May 1, 1888, were a prior lien, and that they were so only as to the property of the railway company then in the five counties where the mortgage had been recorded, is clearly right. As to the remaining property of the defendant company, these liens are certainly prior to the mortgage, if they have been matured as required by the statute. The only requisite of the statute which it is claimed the supply creditors have not followed is the assertion that the statute requires the memorandum of lien to be filed within six months after the supplies were furnished. The language of the statute is as follows:

"No person shall be entitled to the lien given him by the preceding section, unless he shall, within six months after his claim has fallen due file * * * the memorandum," etc.

This statute is too plain to bear discussion. The date of furnishing the supplies has nothing to do with it. It is governed by the date when the claim matures. If the claim is payable in installments, the statute means six months after the last installment is due, for the claim has certainly not fallen due until all the installments are due. If the supplies—whether cars or coal or iron, or what not—are furnished under a single contract, the purchase money of which is divided into installments, no matter how numerous those installments may be, and not under separate contracts, with separate considerations, then the claim has not fallen due till all the installments are due. The argumentum ab inconvenienti, that this would give rise to secret liens, cannot avail against such plain language in a statute, and should be addressed to the legislature. Secret liens, while not favored, are not uncommon. If the clear language of the statute itself left any room for construction, the correctness of the above reasoning would seem to be vindicated by the legislature, for by the act of February 18, 1892, it amended this section so as to provide that this lien should be matured within 90 days after the supplies were furnished, which was quite a superfluous proceeding if the original statute meant what the plaintiffs contend. It follows, therefore, that these supply creditors who furnished rolling stock have a lien, along with the

other supply creditors, upon the railroad and its property, including the rolling stock itself; that this lien is prior to the mortgage except in the five counties named, and prior to the execution in all. These supply liens date back to the time of furnishing the supplies, and have no priority as among each other.

Much attention was given by counsel to the question of the comparative rank of the execution and the lien reserved in the car-trust contracts. From what has been said, we are of opinion that the car creditors, with an exception about to be named, are entitled to a lien, not only on the cars themselves, but also on the other property of the defendant company, superior to that of the execution, as supply creditors, under section 2485, whether the lien reserved on the car-trust contracts is superior to that of the execution or not.

The question of comparative rank does not necessarily arise, except in the case of the New York Equipment Company, mentioned at pages 36 and 39 of the record in the master's report, on which the master passes adversely. This company furnished its cars under a contract dated February 1, 1888, and matured its lien about the same time as the others. It is strenuously argued by counsel for this company that its lien is valid. The commissioner reported against it on the ground that at the date when its contract was made the Code had not gone into effect, and that consequently at that date there was no valid statute giving a lien for supplies, as the statute then in force had been declared unconstitutional for want of proper designation in its title. Counsel for this company contend that the act was only so far invalid as it failed to give notice of its object in its title, and that this objection was removed as soon as the act adopting the Code was approved, even though, by its terms, it did not go into effect till May 1, 1888, as this act gave the notice in which alone the prior statute was defective. Plausible as this argument is, we think that the prior act was in that respect absolutely void, or legally equivalent to no act at all, and that, therefore, no lien could arise till the enactment and operation of a valid act, which did not take place till May 1, 1888. The authorities cited seem to be all authorities where the only question was whether a prior act admitted to be valid, or a subsequent act equally valid, applied. This is very different from the contention here, which is that an act admitted to be void applies to an interregnum between the enactment and operation of a valid act. We must therefore hold that the New York Equipment Company has no claim for a lien under section 2485. It is therefore relegated to its contract lien under section 2462. It is certainly ahead of the mortgage as to this lien, for the mortgage, vesting on its cars as after-acquired property, took it subject to all equities, even unrecorded. On the other hand, the other supply claimants are certainly ahead of this claim of the New York Equipment Company, as its contract was not properly recorded. But, under the principles of marshaling, this company can claim that the other supply claimants must first go against the other property, and this would leave no one to con-

test its right but the owner of the execution. **The main discussion** by counsel was as to the relative rank of the contracts and the execution. This question is most ably argued in the briefs of counsel on either side. We think the counsel for the contracts have the right of the case. We are of opinion that the contracts take precedence of the execution, and that the claim of the New York Equipment Company should be allowed, and that its exceptions to the master's report should be sustained.

In respect to the claim of Paul S. Reeves for supplies furnished by him to the railroad company between August 16, 1890, and December, 1890, we think it must be allowed. His failure to file it within six months after it had fallen due is not fatal, inasmuch as the decree for account, of March 17, 1891, was entered by this court within that period. It has been held in Seventh Nat. Bank v. Shenandoah Iron Co., 35 Fed. Rep. 436, that a decree for account suspends the running of the six months, in such a case. We are of the same opinion, and will disallow the claim.

As to the claim of the Hospital of St. Vincent of Paul for medical services and board rendered to an employe of the railroad company, who had been injured and disabled in its service, it does not seem to us to fall within the terms of the statute giving the lien, and must be disallowed. The hospital did not furnish "supplies necessary to the operation of the railroad," in favor of which section 2485 gives a lien.

A decree will be given in accordance with the foregoing opinion.