## CINCINNATI, RICHMOND & MUNCIE RAILROAD
### v. SHERA ET AL.

[No. 5,051. Filed February 17, 1905. Rehearing denied June 28, 1905. Transfer denied October 13, 1905.]

1. STATUTES.—*Railroads.*—*Liens for Materials.*—Section 7265 Burns 1901, Acts 1889, p. 257, §4, providing for a lien in favor of anyone "who shall furnish any material for use in the construction" of a railroad gives a lien only for materials which go into and become a part of the railroad. *Haskell* v. *Gallagher*, 20 Ind. App. 224, distinguished. p. 316.

2. LIENS.—*Statutory.*—*Nature of.*—*Railroads.*—*Statutes.*—*Construction.*—Liens given by statutes to mechanics, laborers and material men are in derogation of the common law and are only a security for the debts owing to such persons, a strict construction being enforced in ascertaining the persons entitled to the benefits and a liberal construction being given for the enforcement of liens when the persons entitled thereto are ascertained. p. 317.

3. SAME. — *Materials.* — *Coal for Steam Shovel.* — *Railroads.* — *Statutes.*—The person furnishing coal to a contractor for use in the operation of a steam shovel in the construction of a railroad is not entitled to a lien under §7265 Burns 1901, Acts 1889, p. 257, §4, providing for a lien in favor of any person "who shall furnish any material for use in the construction" of a railroad. Black and Roby, JJ., dissenting. p. 319.

From Randolph Circuit Court; *John W. Macy*, Judge.

Suit by Eddie K. Shera and another against the Cincinnati, Richmond & Muncie Railroad. From a decree for plaintiffs, defendant appeals. *Reversed.*

*Nichols, Goodrich & Bales* and *Robbins & Starr,* for appellant.

*John L. Rupe* and *Wickens & Osborn,* for appellees.

ROBINSON, P. J.—The sole question presented by this appeal is whether a person who furnishes coal used as fuel to generate steam for the operation of a steam shovel used by a contractor for excavating and removing earth in the construction of a railroad is given a lien by statute upon the right of way and franchises of the railroad for the coal so furnished and used.

Section 7265 Burns 1901, Acts 1889, p. 257, §4, provides: "All persons who shall perform work or labor in the way of grading, * * * or who shall per-

1. form work of any kind in the construction or repair of any railroad, * * * and all persons who shall furnish any material for any such bridge, * * * or who shall furnish any material for use in the construction or repair of any railroad, * * * may have a lien to the extent of the work or labor performed, or material furnished, or both, upon the right of way and franchises of such railroad corporation," etc.

Counsel for appellee cite, as controlling, the case of *Haskell* v. *Gallagher* (1898), 20 Ind. App. 224, 67 Am. St. 250. In that case appellants, as tenants under a gas and oil lease, erected a derrick and contracted with one Ogle to drill a well. One of the appellees furnished natural gas to the contractor for fuel to run the engine supplying power to do the drilling, and the other appellees performed labor in the drilling of the well, under the employment of the contractor. The well drilled was an oil-well. The statute under which the appellees proceeded (§7255 Burns 1894, Acts 1889, p. 257, §1) provides that contractors and "all persons performing labor or furnishing material or machinery for erecting * * * any house * * * or other-structure, may have a lien," etc. The controlling question in that case, and the only question about which there seems to have been any controversy, was whether an oil-well is a "structure" within the meaning of that term as used in the statute, and it is held that it is. A lien was given one of the appellees for fuel furnished, although the question does not seem to have been a controverted one upon appeal. However, that statute gives a lien "for furnishing material for erecting" the structure, while the statute in the case at bar gives a lien to one "who shall furnish any material for use in the construction" of the work. The language of the two statutes is not the same. The

legislature must have intended by the language used in §7265, *supra,* to give a lien for materials which go into the construction of the railroad, so as to be, in a sense, incorporated therein. And this is the construction given the statute in *Ferguson* v. *Despo* (1894), 8 Ind. App. 523. In that case the foreman sought to acquire a lien for labor in the construction of the masonry of a bridge for a railroad company. The court said: "The bill of particulars contains all the items for which the appellee Despo seeks to recover. Besides the item of work and labor done in superintending the stone and masonry work, we do not think there are any for which the railroad company could be held liable, either personally or by a charge upon its property in the way of a lien. These items are such as board, groceries, tobacco and money furnished the hands and workmen of Cummings & Conner [subcontractors], none of them being materials that went into the construction of the work."

This rule has been followed in other jurisdictions in construing similar statutes. See *Basshor* v. *Baltimore, etc., R. Co.* (1886), 65 Md. 99, 3 Atl. 285; *Central Trust Co.* v. *Texas, etc., R. Co.* (1885), 23 Fed. 703; *Gordon Hardware Co.* v. *San Francisco, etc., R. Co.* (1889), (Cal.), 22 Pac. 406, and see same case 86 Cal. 620, 25 Pac. 125; *Central Trust Co.* v. *Texas, etc., R. Co.* (1886), 27 Fed. 178; *Heltzell* v. *Chicago, etc., R. Co.* (1886), 20 Mo. App. 435. See, also, *Richmond, etc., Construction Co.* v. *Richmond, etc., R. Co.* (1895), 68 Fed. 105, 15 C. C. A. 289, 34 L. R. A. 625.

2. Mechanics' liens are in derogation of the common law, and depend wholly for their existence upon positive legislative enactment. The right to acquire and to enforce such liens rests upon the theory that the value of the property has been enhanced to the extent of the labor done or material furnished. The object of a statute in giving such a lien is to give a security for a debt.

The creditor's right to collect his debt is not enhanced by the lien law, but the means he may employ in collecting it are. It should not be said therefore that the lien law is wholly remedial, and that, as a remedial statute, it should be liberally construed. There is reason for saying that, after the lien has once attached, the statute should be liberally construed for the purpose of fulfilling its objects. But there is no reason for saying that the statute should be given a liberal construction in determining the question whether a lien attaches at all. 2 Jones, Liens (2d ed.), §1554. Where, by force of a statute, the performance of certain labor or the furnishing of certain materials creates an interest in the real estate of another, a court, in determining whether a lien attaches in the particular case, should not extend the statute to labor done and materials furnished, unless clearly within the intention of the legislature. It should be remembered that the statute imposes an additional liability under which it is sought to make the property owner responsible for a debt which he never contracted. In considering the application of the statute in its remedial character, it has been held many times in this State that the statute is to be liberally construed so as to make effective the statute to the extent designed by the legislature. But we do not understand that the rule of liberal construction has been declared in determining whether the particular labor done or particular materials furnished are within the scope of the statute. In *Morris* v. *Louisville, etc., R. Co.* (1890), 123 Ind. 489, it is said: "The courts must construe and enforce the statute as a remedial one, but they can not extend it to meet cases not within its scope, however meritorious they may be. * * * We must, therefore, look entirely to the provisions of the statute to determine the extent and character of the lien which it gives subcontractors who do work and furnish materials in the construction of railroads." See *Caulfield* v. *Polk* (1897), 17 Ind. App. 429. In 2 Jones, Liens (2d ed.), §1554, the

author says: "The rule of construction applicable to questions arising under these liens may be strict at one stage of the proceedings and liberal at another. Mechanics' liens are in derogation of the common law, depending for their existence wholly upon statutes; and therefore, upon the question whether a lien attaches at all, a strict construction is proper. The court is not authorized, in determining whether the statute attaches, to extend it beyond its express terms." See, also, *Butler* v. *Gain* (1889), 128 Ill. 23, 21 N. E. 350; *Mushlitt* v. *Silverman* (1872), 50 N. Y. 360; *Copeland* v. *Kehoe* (1880), 67 Ala. 594; *McGugin* v. *Ohio River R. Co.* (1889), 33 W. Va. 63, 10 S. E. 36; *Rogers* v. *Currier* (1859), 13 Gray 129; *Kay* v. *Smith* (1872), 10 Heisk. (Tenn.) 41; *Trask* v. *Searle* (1876), 121 Mass. 229; Phillips, Mechanics' Liens (3d ed.), §§18, 19; Boisot, Mechanics' Liens, §§34-37.

The steam shovel was a part of the contractor's outfit. It can not be denied that the contractor, for the use of his outfit in connection with his own labors, would

3. have been entitled to a lien, not for the use of the outfit alone, but because, with his labor in the use and operation of the outfit, the work was done. That is, the use of the outfit by the contractor in doing the work would be a part of the contractor's labor for which the statute gives him a lien for work and labor done. In no sense is this different from the lien given the contractor for work and labor done by a laborer whom the contractor had employed and paid to assist in doing the work. See *Lybrandt* v. *Eberly* (1860), 36 Pa. St. 347. In the same manner the use of the contractor's teams in connection with his own labor in accomplishing the work would entitle him to a lien. If we say that the fuel used in furnishing motive power to operate the steam shovel is "material" furnished for use in the construction of a railway, how can we avoid saying that the feed furnished the horses used in operating the wheel scoops is "material" furnished for use

in the construction of the road? Is the steam shovel any the less a part of the contractor's outfit than are the wheel scoops and horses used to operate them? If the fuel furnished to generate the steam is "material," why is not the water used in the boiler? And how could we exclude the lubricating oil necessary in operating the engine?

In *Dudley* v. *Toledo, etc., R. Co.* (1887), 65 Mich. 655, 32 N. W. 884, it is held that clothing and board of men employed in constructing a railroad, and feed for teams employed in such work, are not within the true intent and object of an act for the protection of laborers and "persons furnishing material for the construction and repairing of railroads."

In *McAuliffe* v. *Jorgenson* (1900), 107 Wis. 132, 82 N. W. 706, a statute giving a lien for work and labor performed and materials furnished "in digging or constructing a well" is held not to embrace the use of a well-boring machine rented by its owner to the contractor doing the work. See, also, *Mann* v. *Burt* (1886), 35 Kan. 10.

In *Gordon Hardware Co.* v. *San Francisco, etc., R. Co., supra,* a lien was denied for tools furnished and used in the work, the court construing the statute to apply to what became by its use a part of the completed work.

In *Stewart-Chute Lumber Co.* v. *Missouri, etc., R. Co.* (1891), 33 Neb. 29, 49 N. W. 769, it is held that building material purchased by a subcontractor for the construction of shanties for the persons employed by him on his subcontract, and also for the construction of stables for the teams used by such employes in grading the road, was not within the provisions of the statute giving a lien for materials which "shall have been furnished or labor performed in the construction, repair and equipment of any railroad."

In *Lohman* v. *Peterson* (1894), 87 Wis. 227, 58 N. W. 407, a statute gave a lien for their pay to such persons as did manual labor upon logs or timber, which extended not only to the labor of the claimant himself, but also to

that of his servants, with his teams. It was held that the owner of an ox who let it for hire was not entitled for such hire to a lien upon a third party's railroad ties hauled for the bailee while using the ox.

In *Basshor* v. *Baltimore, etc., R. Co., supra,* under a statute giving a lien for all materials furnished for or used in and about the construction of bridges, a lien is not given for machinery sold to a contractor and used by him for crushing stone to be used in the manufacture of artificial stone for the masonry work, and also for appliances to carry the manufactured stone to the place where it is to be used.

In *Oppenheimer* v. *Morrell* (1888), 118 Pa. St. 189, 12 Atl. 307, under a statute giving a lien for "materials furnished for or about the erection or construction" of a building, a lien was denied for lumber, furnished upon the credit of the building, for the purpose (and for which purpose it was used) of erecting scaffolding to be used in laying the bricks in the erection and construction of the building.

In *Central Trust Co.* v. *Texas, etc., R. Co., supra,* it is held that lubricating and illuminating oils furnished a railroad company did not come within the provision of a statute giving a lien for materials furnished a railroad company.

In *Standard Oil Co.* v. *Lane* (1890), 75 Wis. 636, 44 N. W. 644, 7 L. R. A. 191, lubricating oil sold to be used, and actually used, in operating mill machinery, was held not within a statute giving a lien to persons who "furnish any materials in or about the erection, construction, protection, or removal of any dwelling-house or other building, or any machinery erected or constructed so as to be or become a part of a freehold upon which it is to be situated."

In *Newgass* v. *Atlantic, etc., R. Co.* (1893), 56 Fed. 676, a claim of a hospital for board and medical services

rendered to an employe of a railroad company who had been injured in its service was held not within a statute giving a lien to "all persons furnishing * * * and all other supplies necessary to the operation of any railway."

In *Giant Powder Co.* v. *Oregon, etc., R. Co.* (1890), 42 Fed. 470, 8 L. R. A. 700, cited by counsel for appellees, giant powder sold by a manufacturer to a contractor for the construction of a railroad, and used by the contractor in clearing and fitting the roadway for the ties and rails, is held to be "material used" in the construction of the road within the meaning of the statute. This case admits the correctness of the decision in *Basshor* v. *Baltimore, etc., R. Co.,* *supra,* and says: "The machinery and appliances furnished the contractor in that case, although 'used' in the construction of the bridge, did not enter into the structure and become a part of it. * * * Nice questions may arise as to whether material is 'used' in the construction of a road as a tool or plant simply, or so used or consumed as to entitle the furnisher to a lien on the result for its value. The food furnished a contractor for his workmen may be said to be 'used' and 'consumed' in the construction of the road on which they work; but this is only so in a remote and consequential way or sense. The food does not enter directly into the structure, and is not so used." It is thus seen that the lien was allowed in this case on the theory that the powder did in a sense enter into the construction of the road. The case of *Rapauno Chemical Co.* v. *Greenfield, etc., R. Co.* (1894), 59 Mo. App. 6, follows the case of *Giant Powder Co.* v. *Oregon, etc., R. Co., supra.* In *Winslow* v. *Urquhart* (1875), 39 Wis. 260, the statute gave a lien to any person furnishing "any supplies, or that may do or perform any labor or service" in cutting, hauling, etc., any logs or timber, and it was held that an amount due under contract for cooking food for the men engaged in driving the logs was within the statute.

We see no escape from the conclusion that the reasoning holding the coal furnished in the case at bar to be within the statute would extend the scope of the statute far beyond the legislative intent. If it can be said that the coal was furnished for use in the construction of the railroad, the use must be in a remote and consequential sense, and we see nothing in the statute authorizing its provisions to be extended that far. The demurrer to the complaint should have been sustained.

Judgment reversed.

Comstock, C. J., Wiley and Myers, JJ., concur. Black and Roby, JJ., dissent.

## DISSENTING OPINION.

Roby, J.—Section one of an act approved March 6, 1883 (Acts 1883, p. 140), as amended in 1889 and 1899 (Acts 1899, p. 569, §7255 Burns 1901) provides: "That contractors * * * and all persons performing labor or furnishing material or machinery for the erection, altering, repairing or removing any house * * * may have a lien * * * upon the house * * * or other building * * * or other structure * * * which they may have erected * * * or for which they may have furnished material or machinery of any description." Section twelve of said act as amended in 1885 (Acts 1885, p. 236), and again in 1889 (Acts 1889, p. 259, §4, §7265 Burns 1901), provides: "All persons who shall perform work or labor in the way of grading, building embankments, making excavations for the track, building bridges, trestlework, works of masonry, fencing or any other structure, or who shall perform work of any kind in the construction or repair of any railroad, or part thereof, in this State; and all persons who shall furnish any material *for* any such bridge, trestlework, work of masonry, fence or other structure, *or* who shall furnish any material *for use* in the construction or repair of any rail-

road, or part thereof, in this State, * * * may have a lien," etc. The section was originally in part as follows: "All persons, who by contract with any railroad corporation whose road is not in operation over the whole line thereof, or by contract with the lessee of such corporation, shall perform labor or furnish material for any such corporation, or the lessee thereof, in the way of grading, building embankments, or making excavations for the track of any such railroad corporation, or who shall build or repair bridges or trestlework for any such railroad corporation, or the lessee thereof, shall have a lien," etc.

The amendment extended the right to acquire a lien to classes of persons not within the provision of the original act, and also extended it so far as the use made of the materials furnished is concerned, from those furnished "for" such corporation in the way of grading or building, etc., to material furnished: (1) "For" any bridge, trestlework, work of masonry, fence or other structure; and (2) to materials furnished "for use in the construction" or repair of any railroad or part thereof. The distinction between materials furnished for a building and materials furnished for use in the construction of a building is perfectly plain, and the right to a lien for materials, given by the act of 1889 (§7265, *supra*), is not therefore restricted to the materials which enter into and become a permanent part of the structure, no matter what construction in that behalf might have been given section twelve of the original act, or to §7255, *supra,* as it now stands. Neither is it necessary or competent in this case to "draw the line" as to the character of materials for the value of which a lien may be acquired against a railroad. The legislature has drawn the line in clear and explicit terms, and the only question presented is whether the facts in the case bring it within the statute.

The question for decision, therefore, is whether a person who furnishes coal to be used as fuel to generate steam for

the operation of a steam shovel, such shovel being employed by a contractor in excavating and removing earth necessary to the construction of a railroad, said coal being in fact so used, may obtain a lien for the value thereof, under the provisions of §7265, *supra*. It is not necessary to discuss the question whether the statute should be strictly construed against the claimant, or liberally in his favor. If the facts relied upon come within its plain provisions, then the right to a lien is established, irrespective of the question suggested.

Coal is material. Had a laborer with pick and shovel excavated earth in the course of the construction of appellant's railroad there could be no doubt but that he would be entitled to a lien under the statute. Coal furnished and used for the creation of energy directed to the same end and accomplishing the same purpose comes equally within the reason of the law. It comes also within the very letter of the law, since it is as truly used in the construction of the railroad as the labor in the case supposed could have been. It follows, by the plain, explicit and unambiguous terms of the statute, that a right to a lien for material thus furnished and used is given. Any other conclusion would be in the face of the established and enlightened policy expressed in the act, and consistently pursued by the amendments from time to time made as above set out. The theory upon which the statute is evidently based is that the value of the property upon which the lien may be acquired has been enhanced in value by the work done or material furnished.

It is contended that the coal furnished by appellees and used and consumed as aforesaid, did not enter into and become a part of the appellant's railroad. If it is meant that there can be no lien for material unless such material remains in its original form or is visible to the naked eye after it is used, then a very sufficient answer is that the statute does not thus limit the right, but, on the contrary, confers it generally by broad and comprehensive terms. From

the very nature of things it must frequently be the fact that material used in construction assumes new forms and becomes indistinguishable among the mass of other material with which it is blended, or in the blending of which it is consumed. It must also frequently occur that substantial portions of such material are destroyed and cast aside, never, in fact, being bodily annexed to the structure. But it can no more be said that the coal used to generate a force to excavate a cellar or railway cut, the force generated being directly applied to that purpose, does not enter into and become a part of the structure, than it could be truthfully said that the labor of an artisan does not enter into and become a part of the edifice formed by his skilful hand.

Neither will it do to say that the contractor might have a lien for the value of labor performed by him, including therein the cost of coal used in operating the shovel. That he might have a lien under certain conditions for both the labor and the material used in constructing the railroad is no doubt true, but the conversion of coal into labor by a failure to make a bill of particulars definite and specific is a very doubtful bit of alchemy. No question, however, is involved in this case as to the right of the contractor. The lien is claimed by one who furnished material used by the contractor in the construction of a railroad. His right to such lien is equal and exactly parallel to that of a laborer employed by the contractor who claims a lien for labor done.

In *Ferguson* v. *Despo* (1894), 8 Ind. App. 523, it was held that those furnishing board, groceries, tobacco and money to the employes of subcontractors could not acquire a lien therefor under the act of 1889, since such articles did not enter into the construction of the work. The analogy between the facts therein involved and those under consideration is of the most superficial possible sort. If the manufacturer of the steam shovel, or one who had at

sometime furnished material used in its construction or repair, was seeking to acquire a lien therefor on the railroad, the case cited would be entitled to consideration in connection with the question presented, but it is not in point here.

Neither is it necessary to discuss and review decisions rendered by courts of other states upon other facts different from those involved.

This court in *Haskell* v. *Gallagher* (1898), 20 Ind. App. 224, 67 Am. St. 250, decided the exact question here presented. Unless that case is overruled it is decisive of this one. In a proceeding to foreclose a mechanic's lien a cross-complaint was filed, in which it was averred that the contractor purchased from the cross-complainant natural gas which he used as fuel with which to furnish steam to run the engine used in the drilling of an oil-well, the value thereof being $125. It was contended by the learned attorneys for the appellant in that case, as shown by their brief filed therein, that the engine could not labor without fuel, that the human mechanic could not labor without food, and that under *Ferguson* v. *Despo, supra,* no lien could be acquired. It was further contended that the rule of liberal construction applies to the enforcement of the right and not to its acquirement, and numerous authorities were cited in support of such propositions, a number of which are relied upon in the case at bar. It was also argued that an oil-well was not a structure within the meaning of §7255 Burns 1894, Acts 1889, p. 259, §4. Affirmance of the judgment of necessity involved a denial of both propositions, and the judgment was affirmed, without dissent, after due and full consideration.

The language of §7255, *supra,* is not so comprehensive as that contained in §7265, *supra,* upon which the right to a lien in the case at bar depends.

In *Giant Powder Co.* v. *Oregon, etc., R. Co.* (1890), 42 Fed. 470, 8 L. R. A. 700, a lien was claimed for the

value of powder used in grading portions of the railroad. The reasoning of the court is directly applicable to the facts now under consideration. *Hercules Powder Co.* v. *Knoxville, etc., R. Co.* (1904), 113 Tenn. 382, 83 S. W. 354, 67 L. R. A. 487.

I therefore dissent.