CENTRAL TRUST Co. v. TEXAS & ST. L. RY. Co. (BORDEN and another,

Intervenor.)[1]

*(Circuit Court, E. D. Missouri. April 2, 1886.)*

1. RAILROADS—LIENS FOR MATERIALS—SECTION 3200, REV. ST. MO., CONSTRUED.
    Where articles are furnished a railroad company which do not pass into the structure of its road, they are not "materials," within the meaning of section 3200 of the Revised Statutes of Missouri, and parties furnishing them are not entitled to any statutory lien on the road therefor.
2. SAME—MORTGAGES—MATERIAL-MEN—EQUITABLE LIENS.
    A creditor of a railroad company whose claim arose out of the sale of personal property to the company claimed, after the road was placed in a receiver's hands in a foreclosure suit, that he was entitled to a lien on the road prior to that of mortgage creditors for the whole amount due him, because, under the laws of the state, if the property had not been placed in a receiver's hands he could have seized and sold it under execution. *Held,* that he is only entitled to a lien for the present value of the property sold to the company.

In Equity. Exceptions to master's report.

The facts concerning the intervenor's claim are sufficiently stated in the opinion of the court. The order of the court referred to below is to the effect that all persons who furnished the railroad company with necessary supplies within six months prior to the appointment of the receiver shall be allowed a lien prior in right to that of mortgage creditors. Default in the payment of interest took place September 1, 1883. A receiver was appointed January 12, 1884.

*Charles G. B. Drummond,* for intervenor.
*Phillips & Stewart,* for receiver.

BREWER, J., *(orally.)* In the *Texas & St. Louis Railway Case,* intervening petition by Borden, Sellick & Co., the claim was referred to

---

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.

the master, by him reported, and exceptions to his report were presented. The claim amounted to $2,205.75. It was for scales, trucks, letter-presses, and things of that kind, which were sold and delivered to the road during the period between August 1, 1882, and January 4, 1884. The master reported in favor of the entire amount as a general claim against the road, and gave a lien prior to the lien of the mortgagees for $1,541.60, the price of the goods delivered after September 1, 1883; but declined to award a lien for the balance, $654.15, which was sold and delivered between August 1, 1882, and September 1, 1883, holding that it did not come within the orders of the court respecting claims for materials furnished; and the question now presented is whether the master erred in rejecting the claim for a prior lien for that balance.

Two questions are presented.

*First.* It is claimed that the goods thus delivered were lienable goods, and that under the railroad lien law of your state, although the goods, the trucks, scales, and letter-presses did not pass into the structure, yet, as they became a part of the permanent equipment, they were within the scope of that act. The only difference of moment between the railroad lien law and the general mechanic's lien law is that in the former the word "fuel" is used, giving to those who sell fuel, as well as to those who do labor and furnish materials, a lien. Of course, fuel does not pass into the structure of the road, and, by reason of the use of that word "fuel," it is claimed that the intent of the legislature was to enlarge the scope of the word "material," and make it include anything and everything which passed, not merely into the structure, but into the permanent equipment.

In the intervention of the Waters-Pierce Oil Company, in this same case of *Central Trust Co.* v. *Texas & St. L. R. Co.*, reported in 23 Fed. Rep. 703, we examined that statute, and were of the opinion that such was not a fair construction; that although "fuel" was named in the statute as a matter in respect to which a lien might be claimed, yet it was not the intent of the legislature, by the use of that word, to enlarge the scope of the word "material," as used in ordinary lien laws. It is true that oil does not pass into the permanent equipment, but is a matter for daily consumption; and counsel seek to distinguish this case from that, in that these matters pass into the permanent equipment. I do not think there is any reason to depart from the construction we then placed upon the statute, and must hold that the word "material" in the railroad lien law has no broader or other signification than in ordinary lien laws, and in them it is unquestioned that it includes only those things which pass into the permanent structure.

*Second.* The other question is this: These articles were articles of personal property that passed into the permanent equipment. Section 16 of article 12 of your constitution provides that the rolling stock, and all other movable property, of railroads shall be consid-

·ered personal property. Section 2353 of the Revised Statutes provides that personal property shall, in all cases, be subject to execution upon judgment against the purchasers for the purchase price, and shall not be exempt except in the hands of *bona fide* purchasers for value; and the argument which is made by counsel is very plausibly and forcibly put: That this personal property passed into the hands of the railroad company. It did not pass into the structure, but remained personal property. But for the action of this court in taking possession by its receivers, it could have been seized and sold on execution upon judgment rendered for this claim against the railroad company; and that as the court, by its action in seizing the property, has intercepted that remedy, equitably, it should now order payment out of the assets.

Whatever force there might be to that proposition in some cases, I think here it is not applicable. All that could be claimed under those provisions, giving them full force, is that the specific property which passed into the hands of the railroad company should be liable to seizure and sale. For instance, if a locomotive was sold, that specific locomotive might be seized and sold in satisfaction of a judgment for the price, but no other personal property could also, by virtue of these provisions, be seized and sold. Now, the testimony fails to show that this specific personal property remained in possession of the railroad company, and passed into the hands of the receiver. All that the testimony discloses is that whatever personal property the company then had did pass into the hands of the receiver. This property, as against which the master refused a lien, was sold and delivered months before. Knowing well the hard usage—the wear and tear—which such property in the hands of a railroad company receives, can it be said that we are to presume that all that property remained in existence, and all of it passed into the hands of a receiver? Further, property which is once used deteriorates in value; and, subjected to the hard usage which such property would receive in railroad use, would largely and rapidly deteriorate. If we look upon this as a claim for the entire $2,200, is it not fair to say that the value of the property remaining in the hands of the company, if it did remain, was not in excess of this $1,541 which was allowed as a prior lien? Would it be just to the other claimants—to others having secured liens or equitable liens—to give to this party, out of the assets of the company, full payment for their entire claim, as though that property still remained in the hands of the company in its original perfect condition, unworn and not deteriorated in value? I think not.

It seems to me that all that equitably could be claimed, giving full force to the argument which counsel have made, is to sustain the award of a lien for over two-thirds, as has been given by the master; and that the exceptions to the report of the master should be overruled, and the report confirmed.