THE TRAVELERS INSURANCE COMPANY, Plaintiff, *v.* VILLAGE OF ILION and Others, Defendants.

Supreme Court, Herkimer County, December 28, 1925.

**Liens — mechanic's lien — action by surety company to foreclose mechanic's lien under contract for construction of public improvements — lien predicated on premiums due on workmen's compensation and public liability insurance policies not within provisions of Lien Law, §§ 2 and 5 — word " services " as used in Lien Law, § 2, does not include insurance premiums.**

Plaintiff, a surety company, which issued to a contractor engaged upon certain public improvements in defendant village policies of workmen's compensation and public liability insurance, the premiums of which have not been paid, is not entitled to foreclose a mechanic's lien under the contract for the amount of the unpaid premiums, since within the provisions of sections 2 and 5 of the Lien Law premiums upon insurance policies do not constitute labor or services performed or materials furnished.

The word " services " as used in section 2 of the Lien Law does not include premiums for writing insurance policies.

ACTION to foreclose a mechanic's lien under a contract for the construction of a public improvement.

*Dwight C. Pitcher*, for the plaintiff.

*W. W. Guile*, for the defendant Utica City National Bank.

EDGCOMB, J.    During the progress of the work upon certain public improvements made by the L. D. Sullivan Co., Inc., for the village of Ilion, the plaintiff issued to said contractor workmen's compensation and public liability insurance policies, the premiums of which have never been paid.    On December 7, 1923, the plaintiff filed a lien against the corporate funds of the village applicable to the contract in question, and within three months thereafter commenced this action to foreclose such lien.    The defendant Utica City National Bank, the assignee of the contractor, defends upon two grounds:  (1) That plaintiff's claim is not of such a nature as to entitle it to a lien; (2) that the lien was not filed within the time required by the statute.    The decision of this case turns upon the answer to be given to these two questions.

A mechanic's lien is unknown to the common law.    It is purely of a statutory origin.    One's right to such a lien, and to its enforcement, depends entirely upon the provisions of the act under which

the lien is claimed, and whether there has been a compliance with the requirements of the statute.

Section 5 of the Lien Law (added by Laws of 1911, chap. 873, as amd. by Laws of 1916, chap. 507), which gives the right to such a claim under contracts for public improvements, prescribes as follows: " A person performing labor for or furnishing materials to a contractor, his subcontractor or legal representative, for the construction of a public improvement pursuant to a contract by such contractor with the state or a municipal corporation, shall have a lien for the principal and interest of the value or agreed price of such labor or materials upon the moneys of the state or of such corporation applicable to the construction of such improvement, to the extent of the amount due or to become due on such contract, upon filing a notice of lien as prescribed in this article, except as hereinafter in this article provided."

It will be noted that a lien is permitted only for labor performed or materials furnished. It is not contended here, and could not successfully be, that insurance premiums on policies covering public liability and workmen's compensation constitute materials. Material is some physical substance, and as used in the statute here under discussion means some object of a physical nature which goes into or forms a part of the work under construction. Therefore, to come within the provisions of the act such premiums must be considered as a part of the labor performed in connection with the contract. Can they be so regarded?

The statute must be given a liberal construction to secure the beneficial interests and purposes for which it was enacted. The act itself so prescribes. (§ 23.) We are not, therefore, confined to the strict definition of the word " labor," but are permitted to give to it any reasonable construction which will carry out the intention of the Legislature, if that intent can be ascertained. (*Standard Sand & Gravel Co.* v. *City of New York*, 172 App. Div. 80, 82; affd., 224 N. Y. 687.) This does not mean, however, that the act should be extended in its operation and effect to a case not fairly within its general scope as indicated by the fair and reasonable import of the words and expressions used. (*Spruck* v. *McRoberts*, 139 N. Y. 193; *Toop* v. *Smith*, 181 id. 283; *Mushlitt* v. *Silverman*, 50 id. 360.)

Section 2 of the Lien Law (as amd. by Laws of 1916, chap. 507) defines the word " laborer," as used in the act, as " any person who performs labor or services upon such improvement." Plaintiff lays great stress upon the word " services " in the above definition, and urges that the word " labor," as used in section 5 of said statute (added by Laws of 1911, chap. 873, as amd. by Laws of 1916,

chap. 507) means not only physical exertion or bodily toil, but any service performed to bring about the accomplishment of the public improvement. It is said that, inasmuch as the contractor was required to insure the public against injury by reason of the work, and the workmen on the job against loss of their compensation in the event they were injured in the course of their employment, the furnishing of such policies constitutes "services," in the broad and sweeping meaning so often given to that word, and should, therefore, be considered "labor."

I have not been referred to any case in this or any sister State, and research upon my part has failed to reveal any, in which this exact question has been passed upon. *Russell* v. *Pitchler* (198 N. Y. Supp. 702), cited by defendant, is not an authority upholding its contention. This action was brought to foreclose a mechanic's lien. The case is reported without opinion in 206 Appellate Division, 651, with a note that the opinion of Mr. Justice DAVIS is withheld from publication by direction of the court. For what reason does not appear. The opinion, however, is found in 198 New York Supplement and contains the following sentence: "The fee for workmen's compensation insurance was erroneously admitted and considered." Just why the opinion does not state. An examination of the record and briefs of counsel discloses the fact that the question of whether such premiums were lienable was not raised in or passed upon by either the trial or appellate court. The judgment was reversed because there was no basis for the allowance of many of the items found in plaintiff's favor. The record failed to show that the item of compensation insurance premium, included in plaintiff's recovery, was covered by the agreement between the owner and the contractor, and I take it that the disallowance of that item was for that reason. Concededly no lien would exist unless the services were reasonably included in such contract.

A statute ought to be construed according to the plain and obvious import of its words. Giving to the act the most liberal construction possible, I am unable by any stretch of the imagination to bring myself to believe that premiums for writing insurance policies constitute labor. The word "services" is often used synonymously with "labor," and I am quite sure that it was employed in that sense in section 2 of the Lien Law (as amd. by Laws of 1916, chap. 507), and not in that broad and comprehensive sense of including an act of supplying or furnishing something which is used in connection with the matter in hand.

This view is strengthened rather than weakened, set rather than disturbed, when we consider the purpose of the statute. The

Lien Law was enacted to provide security for a class of people, as a rule poorly able to sustain a loss, who perform labor and furnish material which go into and form a part of and enhance the value of the very property of the owner against which the lien is filed, and whose claims gradually accumulate from day to day, and who cannot conveniently protect themselves unless some similar remedy is afforded them. Such persons have created, in part at least, the very property upon which their lien attaches, and it is manifestly equitable that they be given a preference over a general creditor whose claim cannot be traced directly to the improvement of the property. I do not think that the plaintiff can claim that its service, if such it may be called, comes within the purpose for which the statute was passed.

Even if we were to assume, upon some theory, that the premiums upon these policies constituted labor, that labor would be so indirectly and remotely connected with the improvement itself that it would not come within the scope of the statute.

The rule is well established that in order to entitle a creditor to a lien the materials furnished or labor performed must have been directly connected with, or actually incorporated in the improvement itself, and have become a part thereof. Such labor and material is lienable only when it improves and enhances the value of the very property to which the lien attaches. It has repeatedly been pointed out that it will not do to extend the protection of the statute to services and materials indirectly or remotely associated with the construction of the improvement.

It was held in *McCormick* v. *Los Angeles City Water Co.* (40 Cal. 185) that a person was not entitled to a lien for the value of his services rendered in cooking for the laborers employed on a public improvement under construction, notwithstanding the cooking was done on the ground as the work progressed.

The Supreme Court of New Hampshire, in *Perrault* v. *Shaw* (69 N. H. 180), held that one does not perform labor or furnish materials for making brick, within the meaning of the statute, by furnishing board, under a contract with the manufacturer, to the workmen employed in the brick yard.

In *Barnard* v. *McKenzie* (4 Colo. 251) it was held that a lien would not lie for labor in hauling ores from a mine to a quartz mill.

In *Rara Avis Gold & Silver Mining Co.* v. *Bouscher* (9 Colo. 385) the plaintiff was denied a lien for labor performed as an accountant and disbursing agent, although such services were necessary in the performance of the contract.

In *Central Trust Co.* v. *Texas & St. L. R. Co.* (27 Fed. 178) it was held that scales, trucks, etc., which went into the general

equipment of a railroad, did not constitute such material as would entitle the plaintiff to a lien, because they did not actually go into and form a part of the permanent structure of the railroad.

In *Shultz* v. *Quereau Co.* (210 N. Y. 257) it was held that coal sold to a contractor who was constructing a State highway, and which was used to generate steam in the engines used on the contract, did not constitute material furnished for the construction of the highway within the meaning of the statute.

The claimants in the above-cited cases were not denied a lien because they did not actually perform labor or furnish materials, but because such labor or materials were only indirectly or remotely connected with the improvement and did not actually go into and form a part of the completed structure. Such is the case here, were we to construe these premiums as labor or materials.

There must be some end to which the construction of this statute is allowed to go. I feel that to hold that insurance premiums, even though the policies are written in connection with the work itself, and protect the very laborers who do the work against accident and disability, come within the provisions of the statute, would give to the act an unnatural and strained construction, and would tend to extend its provisions indefinitely, and far beyond what was ever intended by the Legislature.

In view of such holding, it becomes unnecessary to discuss the other objection of the defendant.

Judgment for defendant, with costs.