HURD BROTHERS, Plaintiff, *v.* THE H. R. DAY CONSTRUCTION COMPANY and Others, Defendants.

Supreme Court, Erie County, December 14, 1932.

*Edwin J. Culligan,* for plaintiff Hurd Brothers.

*Edwin J. Culligan,* for defendants Bessemer Cement Corporation, Buffalo Slag Co., Inc., Robert Foote, Weed & Co., Charles T. Moebius, Inc., and Dump Truck Service, Inc.

*Frederick O. Bissell,* for Standard Oil Company of New York, Inc.

*A. T. O' Neil,* for H. R. Day Construction Company.

*Dinsbier & Jensen,* for Bucyrus-Erie Company.

*Eugene Warner,* for Blaw-Knox Company.

*Locke, Babcock, Hollister & Brown* [*George C. Lea* of counsel], for Kalman Steel Corporation.

*Walter & Wolff* [*E. R. Wolff* of counsel], for the Royal Indemnity Company.

*Samuel Gottesman* [*E. R. Wolff* of counsel], for the Continental Casualty Company.

*E. R. Wolff,* for Charles Waters.

*Ludwig Wilson* [*E. R. Wolff* of counsel], for H. R. Day Construction Company.

*Harold Horowitz,* for the Vannot Machine Corporation.

*Stanley H. Montfort,* for Dump Truck Service Co , Inc.

*Saperston, McNaughton & Saperston* [*Samuel Blinkoff* of counsel], for the Carey Company.

*Karl Goldman,* for H. D. Taylor Co., Inc.

*Vincent A. Tauriello,* for the State of New York.

*Lathrop & Whiting,* for Dravo Equipment Company.

CHARLES B. WHEELER, Official Referee. This is an action to determine the validity and the distribution of certain mechanics' liens filed against a fund of $22,520.77 now in the hands of the State Comptroller growing out of the construction of a certain State highway bridge over Eighteen Mile creek in the county of Erie.

The original contract for the building of this bridge was entered into between the State and Cavaian Engineering Corporation. The contract, however, was by and with the consent of the State assigned to the H. R. Day Construction Company, which entered on the execution of the contract. The bridge was completed by said company and on the 29th day of December, 1931, accepted by the State authorities, and there then remained due and owing the contractor said sum of $22,520.77, against which have been filed by various parties liens and assignments. There appears to be no dispute that the contractor, the H. R. Day Construction Company, actually owes to the various parties to this litigation the amounts claimed by them in the notices of liens and assignments filed, but serious questions are presented by the proof offered in this case whether certain of the claims asserted constitute legal and valid liens on the fund subject to distribution. As the fund subject to distribution is not sufficient to satisfy in full all creditors asserting such liens, the validity of such liens becomes an important question not only as to such lienors whose claims are disputed, but also to others having valid liens, as the allowance or disallowance of disputed liens affects the percentage of their claims which the fund will pay.

The H. R. Day Construction Company since the completion of its contract with the State has been declared bankrupt and its affairs are now in the hands of a trustee in bankruptcy. Before, however, in this opinion discussing the disputed claims or liens, the referee will here state the claims or liens which he deems established by the proof and entitled to share in the distribution of the fund.

The following are the names and amounts of such liens without the addition of interest, to wit:

| | |
|---|---:|
| Hurd Brothers | $4,250 00 |
| Buffalo Slag Co., Inc. | 4,642 52 |
| Bessemer Cement Corporation | 4,550 70 |
| G. Elias & Bros., Inc. | 541 66 |
| Kalman Steel Corporation | 6,787 01 |
| Robert Foote | 205 25 |
| H. D. Taylor Company | 107 80 |
| The Carey Company | 106 79 |
| The Vannot Machine Corporation | 298 97 |
| Weed & Co | 711 75 |
| Dump Truck Service Co., Inc | 1,185 00 |
| Charles T. Moebius, Inc. | 168 00 |
| | $23,456 45 |

The above-stated liens and claims are to share *pro rata* in the disposition of the funds in question.

## AS TO THE CLAIMS OF THE ROYAL INDEMNITY COMPANY AND OF THE CONTINENTAL CASUALTY COMPANY.

One of the important questions involved in the disposition of this case is the right, if any, of the Royal Indemnity Company and of the Continental Casualty Company in the disposition of the fund now in the State Comptroller's hands, arising from the contract for the erection of the bridge over Eighteen Mile creek.

On April 20, 1931, the Royal Indemnity Company issued its policy of workmen's compensation insurance in favor of the H. R. Day Construction Company, the contractor, and between the 20th of April, 1931, and December 15, 1931, there accrued by way of premiums under such policy the sum of $9,491.58, on account of which there was paid $200, leaving a balance due for premiums of $9,291.58.

The Royal Indemnity Company on April 20, 1931, also issued to the H. R. Day Construction Company its policy of public liability insurance, and there accrued by way of premiums on said policy between April 20 and December 15, 1931, the sum of $355.80, on which there has been paid the sum of $50, leaving a balance due of $305.80. The accrued interest on these sums exceeded $400, bringing the indebtedness for premiums on said policies over $10,000.

On February 20, 1932, the contractor, the H. R. Day Construction Company, to secure the payment of such insurance premiums, assigned to the Royalty Indemnity Company the sum of $10,000 of the moneys due and to become due the H. R. Day Construction Company on monthly or final estimates or retained percentages arising out of the public improvement contract the subject of this litigation. Such assignment was filed with the State Comptroller and with the Department of Public Works on February 23, 1932.

A similar assignment was executed by the contractor in favor of the Continental Casualty Company to secure the payment to it of the premium on the surety bond executed by the Continental Casualty Company, and filed with the State. There was due said company for premium on said policy the sum of $1,698.50. The assignment was for $2,000, although the Continental Casualty Company on the trial made no claim on said fund in excess of said sum of $1,698.50.

These insurance companies claim the right to participate on the distribution of the moneys in the State Comptroller's hands. Other lienors challenge that right.

In the discussion of the legal questions involved it should be noted that the work for the construction of the bridge in question was completed and accepted by the State on the 29th day of December, 1931, and the assignments made by the contractor to the insurance companies in question were not executed until February 20, 1932, something like fifty days after the completion and acceptance of the bridge erected, whereas by section 12 of the Lien Law notices of lien on account of public improvements may be filed " *within thirty days after such completion and acceptance.*"

If the court may treat the assignments in question as tantamount to a notice, nevertheless, we are of the opinion an assignment or notice made and filed later than the statutory time prescribed for so doing must be deemed too late to establish any lien on the fund so as to entitle such a creditor of a contractor to share in the distribution of the fund *pro rata* with other creditors who have complied with the law and filed their liens within the time permitted for so doing.

The referee does not question the right of the contractor to make assignments of money due him for work performed under his contract with the State to secure the payment of an indebtedness incurred in the cost of construction. As between the contractor and the assignee undoubtedly such an assignment would be deemed good and legal as a common-law assignment. But quite another question is presented as to the effect of such an assignment as against creditors of the contractor who had obtained valid liens on the public fund by complying with the statute giving and establishing such liens as against one failing to comply with such statutory requirements. To obtain a lien the statutory requirements must be met, and a creditor who does not comply gets no lien. The logical consequence is that while a contractor may assign moneys arising under his contract, nevertheless, if prior to such assignment valid liens have attached to the fund, the assignee must take any right he has subject to those liens. The contractor as assignor can give no other or better title that he himself has. (*Rapps* v. *Gottlieb*, 142 N. Y. 164; *Davis* v. *Bechstein*, 69 id. 440.)

Counsel for the insurance companies cite the case of *Walker* v. *Vanderlip* as an authority sustaining his contention. That case was decided by the referee in which he used the expression in substance that the fund for distribution in a public improvement was a trust fund on which all lienors were entitled to share ratably, applying the doctrine to those filing liens as well as those holding assignments. In that case all the contending parties had acted within the statutory time in filing notices or taking assignments, and the language employed related wholly to those who had obtained

valid liens by timely observance of the statutory requirements. As to them they all stood on a parity and entitled to share *pro rata* in the distribution, and the fund was a trust fund for such purposes. It was not intended by the court to give those failing to comply with the statute equal rights with those who did.

There is a further consideration bearing on the rights of the insurance companies to assert a lien for insurance premiums on the fund subject to distribution.

Prior to recent amendments to the Lien Law it was held by the courts that moneys due for premiums on insurance policies were not *lienable* claims. (*Travellers Ins. Co.* v. *Village of Ilion*, 126 Misc. 275; *Russell* v. *Pitchler*, 198 N. Y. Supp. 702.)

However, by more recent legislation, it was the evident intent of the Legislature to put such claims in the same class as materialmen and laborers, that is, to make the premiums *lienable.* In section 2 of the Lien Law " premiums on insurance " are included as items under head of " *cost of improvement.*" However, this change was not to take effect until July 1, 1932, whereas the bridge in question was built and accepted before the section, as amended, went into effect.

The rights of parties in this action must be determined under the statute as it existed at the time the contract was made and the work performed, and not by amendments not going into force until after the work was completed.

### As to the Lien of the Buffalo Slag Company for $4,643.53.

It is conceded the claimant has a valid lien for the above amount, subject, however, to the rights of other lienors and equities growing out of a so-called trust agreement made August 11, 1931.

The question is, have other lienors any rights or equities which would reduce the lien of the slag company for the amount of their claim? The contractor, the H. R. Day Construction Company, on or about August eleventh, became embarrassed and was unable to proceed with the completion of its contract without the co-operation of its creditors, who had furnished labor and material on the job. There was on or about the 11th day of August, 1931, due and owing the contractor for work done on its contract with the State $68,195.42. The H. R. Day Construction Company thereupon executed an assignment of said sum of $68,195.42 to the Buffalo Slag Co., Inc., and the slag company on its part executed an agreement by which it agreed to receive said moneys and devote them to the paying of all liabilities of said contractor incurred on and after August 1, 1931, of the kind and nature specified under the

Mechanics' Lien Law as costs of the improvements after August 1, 1931.

The contractor proceeded with the work. The slag company received said moneys so assigned, and from them paid to various materialmen and others the money so received under said assignment and in this action has accounted for said moneys so received and paid out. Such payments were made on the certification of the H. R. Day Construction Company as to the correctness of the bills rendered. At the time of making the assignment in question no liens or assignments had been made or filed.

The entire purpose of the assignment and agreement appears to have been to insure those dealing with the contractor that moneys coming from the State on the contract should be used in completing the contract, and this was done, and all moneys paid by the State under the assignment were in fact so used.

The referee is unable to see anything illegal in doing what was in fact done. The money was owing by the State. The contractor was entitled to be paid for it. It directed by the assignment payment to the slag company, to be used in a perfectly proper way and in fact in the interest of all the contractors' creditors, and this was done, and we find no rights to such fund in the contractor or its trustee in bankruptcy or in favor of other lienors.

### As to the Claim of the Defendant Dump Truck Service Company, Inc.

In the construction of the bridge in question the contractor, the H. R. Day Construction Company, required the use of a certain crane with an unusually long boom. It asked the Dump Truck Service Company, Inc., if it could supply such a crane, and was told it could. As a result of conferences it was agreed the dump company would supply the crane desired with a man or men to operate it, and this was done. The contractor agreed to pay for such crane and operator the sum of $1,050 per month. It is for the use of such crane and the services of the operator a claim was filed. There is no question that there is now due and owing for such use and services the sum of $3,328.51.

It is, however, contended that the claim is not a lienable one; that the claim is for the rent of machinery employed in construction work, and as such by virtue of the decision of the Court of Appeals in the case of *Troy Public Works Company* v. *City of Yonkers* (207 N. Y. 81) the dump company has no right to assert any lien for the use of such crane. The crane in question remained the property of the dump company and on the completion of the work was returned to it. It is contended that the price agreed to be´

paid was simply as *rental* for the machinery, and within the meaning of the Mechanics' Lien Law is not to be deemed material going into the construction of the bridge, and the owner is not entitled to a lien for the unpaid rent thereof.

In view of this decision in *Troy Public Works Co.* v. *City of Yonkers* (*supra*) the referee believes there can be no real valid claim made unless it be for the fact that the claim is based not only on the rental of the crane, but also for the services of a man to operate it. The amount of $1,050 per month included both the use of the crane and the services of the operator. There was nothing said as to what was to be paid for the crane or what for the operator. It was to be a lump sum for both.

However, on this trial testimony was given that the reasonable value of the operator was $15 per day, and at that rate the services of the operator for the time the crane was worked would be $1,186.

We are of the opinion that the dump company is entitled to a lien for that amount, but not for the larger amount claimed which includes rental of the crane itself which has been held not lienable by the Court of Appeals in *Troy Public Works Co.* v. *City of Yonkers* (207 N. Y. 81).

AS TO THE LIEN OF THE BLAW-KNOX COMPANY FILED FOR THE SUM OF $4,250.

This claim is for the rental of steel forms which were used for the purpose of molding the concrete which went into the construction of the bridge. They were supplied under a contract termed a lease. All the forms furnished were returned to the lienor.

The referee is of the opinion the claim is not lienable under the authority of *Troy Public Works Co.* v. *City of Yonkers* (207 N.. Y. 81), and, therefore, cannot participate in the distribution of the fund on hand.

AS TO THE LIEN OF WEED & CO. FILED FOR THE SUM OF $762.39.

This claim represents bills for various items of hardware shipped by the claimant to the contractor and never returned. Objection, however, is made to the allowance of certain items on the ground they were not incorporated into the work. There is no explanation of this except what may appear from the face of the invoices introduced in evidence. It is, therefore, difficult for the referee to pass on the objections made. However, he is of the opinion the charge made of $27 for a Buffalo forge, of $28.34 for an anvil, and of $4.50 for a grinder; in all, $59.84, represent items for things not lienable, and which were for machines to do the work. The lienable claim is, therefore, reduced to $711.75 and allowed for that amount.

## As to the Claim of the Dravo Equipment Company for $143.78.

The referee is of the opinion the item or charge is not a lienable one, and is, therefore, disallowed.

## As to the Claim of Richard O. Smith as Trustee in Bankruptcy of the H. R. Day Construction Co., Inc.

The trustee in bankruptcy contends the assignment and trust agreement dated August 11, 1931, in favor of the Buffalo Slag Company, was illegal and void, and the moneys paid by the slag company pursuant to such trust agreement should be paid the trustee in bankruptcy.

The referee having found adverse to this contention, the claim of the trustee in bankruptcy is hereby dismissed.

## As to Claim of Charles R. Waters for $5,000.

This represents a claim based on an assignment for moneys due him from the contractor, which do not represent moneys earned by the claimant for any items falling within the provisions of section 25 of the Lien Law. It is, therefore, disallowed.

The Standard Oil Company has filed notice claiming a lien on the fund for $504.90. This lien must be disallowed. The notice of lien was not verified as required by statute (Lien Law, § 9, subd. 7). (*Dwelle-Kaiser Co.* v. *Frid*, 139 Misc. 83.)

The following claims against the fund for distribution were filed more than thirty days after the completion of the bridge and its acceptance by the State and must, therefore be disallowed (Lien Law, § 12), to wit:

Montrose Contracting Company, filed February 3, 1932, for $93.31.

The A. F. Schultz & Company, Inc., filed February 13, 1932, for $116.92 and the Bucyrus-Erie Company filed February 20, 1932, for $122.15.

The attorneys who appear in the case and who have established the liens as stated for their clients are entitled to tax a bill of costs and be paid from the fund.

Let findings be prepared in accordance with the views above expressed.

So ordered.