In the Matter of the Application of JOHN J. O'ROURKE, INC., Petitioner, for an Order Discharging a Certain Alleged Lien of JOHN J. KINNEY Co., INC., Respondent, upon the Money of the State of New York Applicable to Pompey-Cazenovia Highway Contract No. 8391.

In the Matter of the Application of JOHN J. O'ROURKE, INC., Petitioner, for an Order Discharging a Certain Alleged Lien of TRAVELERS INSURANCE COMPANY, Respondent, upon Money of the State of New York Applicable to Pompey-Cazenovia Highway Contract No. 8391.

Supreme Court, Onondaga County, February 24, 1934.

*Love & Lyman*, for the petitioner.

*Bailey, Ryan & Agan*, for the respondent Travelers Insurance Company.

*Quinn, Higgins & Tormey*, for the respondent John J. Kinney Co., Inc.

SMITH (E. N.), J.   The motions raise the question as to whether claims for unpaid insurance premiums for workmen's compensation insurance and for public liability insurance are lienable.

The Lien Law, article 2, section 3, reads as follows:

" § 3.   Mechanic's lien on real property.   A contractor, subcontractor, laborer or material man, who *performs labor or furnishes materials* for the improvement of real property * * * shall have a lien for the principal and interest, of the value, or the agreed price, of such labor or materials upon the real property improved or to be improved and upon such improvement, from the time of filing a notice of such lien as prescribed in this chapter."

Article 1, section 2, Definitions, defines " laborer " as follows: " Laborer.   The term ' laborer,' when used in this chapter, means any person who performs labor or services upon such improvement."

It defines " materialman " as follows: " Materialman.   The term ' materialman,' when used in this chapter, means any person who furnishes material either to an owner, contractor or subcontractor, for such improvement."

There is nothing ambiguous or uncertain in either of these definitions or in the designation of those persons who are entitled to a lien; nor has there been any uncertainty as to the general purposes of the Lien Law itself to afford protection to laborers and materialmen.   That insurance premiums are not within the definition of " laborer " has been definitely held.   (*Travelers Insurance Co.* v. *Village of Ilion*, 126 Misc. 275, decided December, 1925.) But it is claimed by the respondents that the law in this respect has been changed, by virtue of an amendment to section 2 of article 1 thereof, defining " cost of improvement." (Laws of 1929, chap. 515; Laws of 1932, chap. 627.)   So far as important here, the definition of " cost of improvement " reads as follows: " The term ' cost of improvement,' when used in this chapter, means expenditures incurred by the *owner* in paying the claims of a contractor, an architect, engineer or surveyor, a subcontractor, laborer and materialman, arising out of the improvement, and shall also include fair and reasonable sums paid for obtaining building loan and subsequent financing, *premiums on bond or bonds filed pursuant to section thirty-seven of this chapter, or required by any such building loan contract* or by any lease to be mortgaged pursuant thereto, * * * *premiums on bond or bonds filed to discharge liens*, sums paid to take by assignment prior existing mortgages, which are consolidated with building loan mortgages and also the interest charges on such mortgages, sums paid to discharge or reduce the indebtedness under mortgages and accrued interest thereon and other encumbrances upon real estate existing prior to the time when the lien provided for

in this chapter may attach, sums paid to discharge building loan mortgages whenever recorded, taxes, assessments and water rents existing prior to the commencement of the improvement, and interest on building loan mortgages, ground rent and *premiums on insurance likewise accruing during the making of the improvement.*"

Now it is obvious that in every improvement there are other costs besides expenditures for *labor* and *material,* and this " definition " has nothing to do with the extension of the meaning of the words " laborer " and " materialman " as defined in the statute, but rather refers to those payments which may legitimately be made out of moneys received by the owner through a building loan mortgage or building loan contract, to the end that any one furnishing materials or furnishing labor may know that the *fund,* to wit, the proceeds of the building loan contract or the building loan mortgage, may be used for these purposes without any violation of trust on the part of the party advancing the money according to the terms thereof or the owner in paying money out for such purposes. Furthermore, it is obvious that of necessity this definition refers to a private owner who is creating a fund to pay the cost of construction, and not to the fund which is created to pay the cost of a public improvement.

My understanding is that the contracts in these particular instances provided that insurance policies should be taken out to provide against workmen's compensation and public liability claims, and that these items of course would have to be figured upon in any estimate or bid submitted by a contractor, as they necessarily would become a part of the cost of the work; and it may very well be argued, as a question of sound policy, that, particularly as to the premiums of insurance to cover workmen's compensation claims, they ought to be lienable; and possibly so also in respect of premiums for insurance as against public liability; but the difficulty is that the Legislature has not as yet so provided.

Sections 25-a and 25-b of the Lien Law provide, in respect of funds received by a contractor for a public improvement, that such funds are trust funds, to be applied first to the payment of claims of architects, engineers, laborers and materialmen, " *and to the payment of premiums on surety bond or bonds filed* " and " premiums on insurance likewise accruing during the making of the improvement," and that, until such claims are paid, any application of the funds for other purposes makes the receiver thereof guilty of larceny. Assuming, without deciding, that the words " premiums on insurance " refer to insurance premiums of all kinds, as distinguished from fire insurance premiums alone, these sections, while showing a recognition that insurance premiums are properly

37

payable out of the fund, are referenced to moneys after they have been paid out of the fund to the party entitled thereto, to wit, the contractor or subcontractor, and make no change or alteration in the definition or meaning of the words " laborer " or " materialman."

Realizing the merit in the suggestion that premiums of insurance of the type under consideration might or ought to be included as a lienable item, and giving to the Lien Law the most liberal possible construction, I am unable to find any warrant in the law, as it now exists, for the inclusion of such insurance premiums within the definition of " laborer " or " materialman."

While it is true that compulsory insurance premiums to cover workmen's compensation liability are necessarily related to the cost of labor, and that in case of injury to a laborer the insurer has to pay the compensation to the laborer, and that in the end the premiums for the security in reality are a part of the labor cost, the provisions as to the items which are lienable, as contained in section 3 of article 2 of the Lien Law, above quoted, has remained unchanged since 1897 (Laws of 1897, chap. 418), when the Lien Law was first enacted; and this is also true as to the definitions of the words " laborer " and " materialman."

The first constitutional Workmen's Compensation Law was chapter 41 of the Laws of 1914. This act had no relationship to the Mechanics' Lien Law, and, while it imposed an additional burden upon owners and contractors, it is not for the courts to enlarge the meaning of legislative definitions by reason of changed conditions or to include within the scope of the law items which did not exist at the time the law was enacted; in other words, the court may not change the legislative intent. There is nothing in recent amendments to the Lien Law which shows any purpose on the part of the Legislature to enlarge the scope of lienable items so as to cover insurance premiums. The appeal for such purpose should be to the Legislature and not to the courts.

The motions, therefore, are granted, with ten dollars costs in each matter.