RAYMOND CONCRETE PILE COMPANY, on Behalf of Itself and All Other Creditors of L. P. O'CONNOR, INC., Interested in the Fund Received by L. P. O'CONNOR, INC., from the City of New York for a Public Improvement of the City of New York Known as Criminal Court and City Prison, Manhattan, Contract No. 237–2, Who May Come in and Contribute to the Expenses of This Action, Appellant, *v.* FEDERATION BANK AND TRUST COMPANY, Respondent.*

First Department, December 20, 1940.

*Horace R. Lamb* of counsel [*Francis T. Carmody* with him on the brief; *LeBoeuf, Machold & Lamb,* attorneys], for the appellant.

*Sidney Abrams* of counsel [*Buchter, Rathheim, Abrams & Holz,* attorneys], for the respondent.

GLENNON, J.   This action was instituted by the plaintiff in a representative capacity on behalf of itself and other creditors of a contractor, L. P. O'Connor, Inc.   The latter entered into a contract in October, 1938, with the city of New York, for the construction of the foundation of the new Criminal Court House and City Prison, Manhattan.   Plaintiff was a subcontractor, having an unpaid claim amounting to upwards of $80,000 for services and materials furnished the contractor for a portion of the foundations of the building under construction.

Plaintiff asked that a decree be entered finding that the sum of $78,000, constituting a portion of a total payment amounting to $178,088.38 received by the contractor, L. P. O'Connor, Inc., from the city of New York, as a payment for work done and materials furnished for the public improvement during the month of January, 1939, be impressed with a trust for the benefit of the several classes of creditors of the contractor, as provided in section 25-a of the Lien Law.

After L. P. O'Connor, Inc., had entered upon the performance of the contract and on six occasions between January 18, 1939, and February fourteenth of the same year, it borrowed from the defendant bank sums aggregating $72,500 for which it executed six short term promissory notes due on different dates beginning with February 20 and ending on March 20, 1939.   There was an overdraft in the bank account of L. P. O'Connor, Inc., in the sum of $5,457.30 on February 15, 1939.   After the close of business on February 16, 1939, Mr. O'Connor, the president of the company which bears his name, called at the bank at the request of its vice-president, Mr. Shanahan, and was told by the latter that he would have to pay the overdraft.   As the result of the conference between O'Connor and the vice-president, a new note, payable on demand, was drawn.   The amount of the note included the six term notes totaling $72,500, which were not then due, and an additional sum of $5,500 — a little more than sufficient to cover the overdraft.   The note was executed and delivered to the defendant bank, and L. P. O'Connor, Inc., obtained in return the six term notes.

At the time the demand note was delivered to the bank, it cannot be questioned but that the bank knew there was due to be paid to L. P. O'Connor, Inc., by the city of New York, on or before February 17, 1939, the sum of $178,088.38. The vice-president of the defendant bank testified, in effect, that he knew that the O'Connor Company had the municipal contract; he knew that, in connection with the work, he employed materialmen and subcontractors; that he had a discussion with O'Connor and his representatives concerning expected payments; that by following the *City Record*, to which the bank subscribed, he said, " we knew that such a 'warrant for that amount was to be paid to O'Connor from the record in the *City Record*." It is not disputed that on February 17, 1939, the city treasurer of the city of New York issued a warrant bearing that date and signed by the comptroller. At the top of the warrant appeared the words in large print, " CITY TREASURY — CONSTRUCTION FUND Project No. P. W. 237," and attached to and forming a part of the warrant, as a single instrument, was an order or check signed by the city treasurer, payable to the order of L. P. O'Connor, Inc., in the sum of $178,088.38, and drawn on the Chase National Bank for P.W.A. 237. This check bore the legend " Pay out of the City Treasury, P.W.A. No. 237 Construction Fund for Criminal Court & City Prison Manhattan the amount of the above warrant to the order of the payee named therein." The warrant and check was indorsed and deposited by L. P. O'Connor, Inc., in its account with the defendant bank on the day it was dated. The defendant bank instead of waiting for two days to allow for the clearance of the check, on the very same day presented it to the Chase National Bank and received the proceeds amounting to $178,088.38 which were credited to the account of L. P. O'Connor, Inc., in the bank.

There was due to be paid to the plaintiff, as subcontractor, by the O'Connor Company on Monday, February 20, 1939, the sum of $80,344.54 for work done and materials furnished in connection with the public improvement for the month of January, 1939.

At the opening of business on the last-mentioned date, the defendant bank applied $78,000 from the account of L. P. O'Connor, Inc., to the payment of its demand note which, as we have seen, was delivered to it after the close of business on February sixteenth. The O'Connor Company made no deposits in its account during the time that elapsed between February sixteenth and February twentieth, other than the check it received from the city treasurer on February seventeenth. It cannot be gainsaid that the payment of the $78,000 to the bank came from the proceeds of that check. It has been found by the trial court that:

" 25. On February 22, 1939, L. P. O'Connor, Inc., delivered to plaintiff its check dated February 21, 1939, drawn on the defendant bank, payable to the order of Raymond Concrete Pile Company in the amount of $80,344.54 representing a payment for work, labor and services and materials and supplies furnished by the plaintiff as subcontractor in and about the construction of a portion of the foundations of the said new Criminal Court and City Prison.

" 26. At the opening of business on February 23, 1939, plaintiff presented said check to the defendant bank for certification; the defendant bank refused certification thereof, stating as the reason therefor that there were not sufficient funds of said L. P. O'Connor, Inc., on deposit in the defendant bank to pay the said check."

Section 25-a of the Lien Law reads as follows:

" § 25-a. Contractor on public improvements who diverts funds guilty of larceny.

" The funds received by a contractor for a public improvement are hereby declared to constitute trust funds in the hands of such contractor to be applied first to the payment of claims of sub-contractors, architects, engineers, surveyors, laborers and material-men arising out of the improvement, and to the payment of premiums on surety bond or bonds filed and premiums on insurance accruing during the making of the improvement and any contractor and any officer, director or agent of any contractor who applies or consents to the application of such funds for any other purpose and fails to pay the claims hereinbefore mentioned is guilty of larceny and punishable as provided in section thirteen hundred and two of the Penal Law."

There cannot, be any question about the fact that the bank, like the average citizen, is charged with knowledge of the provisions of the above-quoted section of the Lien Law. If ever a check was earmarked, showing that it was received by a contractor for a public improvement, it was the city's check payable to the O'Connor Company, the contractor, on February 17, 1939. It is fair to infer, from the tactics which were resorted to by the bank's officer in procuring the demand note and relinquishing the six short term notes which were not then due, that the defendant bank had reason to suspect that the O'Connor Company, which had overdrawn its account, would be unable to meet the payments of the claims of its subcontractors in connection with the public improvement. Reasonable inquiry on the part of the bank undoubtedly would have disclosed the fact that L. P. O'Connor, Inc., would be unable to pay its subcontractors on February twentieth, if, as was done in this case, the sum of $78,000 was deducted from the face amount of the check which the O'Connor Company deposited on February

seventeenth. Of course, we do not know what O'Connor told defendant's vice-president on the afternoon of February sixteenth at the time he executed the demand note. Whether or not there was a discussion as to the ability of L. P. O'Connor, Inc., to meet its obligations on February twentieth, we cannot say.

This is not a case where the check in dispute was deposited by the O'Connor Company for its own use and the money paid out by the bank in the ordinary course of business. The difficulty, as we see it, is that the bank deliberately applied the earmarked check to the payment of its own claim. In *Bischoff* v. *Yorkville Bank* (218 N. Y. 106), Judge COLLIN said, in part: "Trust funds do not lose their character as such by being deposited in a bank for the individual credit and account of the person who is trustee. It may be stated as a general principle that if money deposited in a bank was held by the depositor in a fiduciary capacity, its character is not changed by being placed to his credit in his individual bank account."

In *Allen* v. *Puritan Trust Co.* (211 Mass. 409; 97 N. E. 916), an oft-cited case, the court said, in part: " The principle governing the defendant's liability is, that a banker who knows that a fund on deposit with him is a trust fund cannot appropriate that fund for his private benefit, or where charged with notice of the conversion join in assisting others to appropriate it for their private benefit, without being liable to refund the money if the appropriation is a breach of the trust." (Citing cases.)

The case of *Barclay* v. *Corn Exchange Bank Trust Co.* (243 App. Div. 692; affd., 267 N. Y. 630) is distinguishable on its facts from this case and is not in point.

We believe that under the circumstances of this case, taking into consideration the facts and provisions of section 25-a of the Lien Law, the defendant bank had no right to apply the funds in the manner in which it did.

At the conclusion of the testimony, both sides rested, with the understanding that in the event the court should decide in favor of plaintiff, the latter would have the right, at the appropriate time, " to offer further testimony in respect of the services of the plaintiff in the institution of this action, * * *. I assume that it would await your final determination on the merits of the action, and then you might receive some testimony as to the nature of the services of the plaintiff and the prosecution of this action."

It may be necessary, under the circumstances, to remit the case to Special Term for the purpose of giving the plaintiff and the other creditors an opportunity to submit additional proofs as to the services which were rendered and other facts and circumstances.

Apparently, that was the intention of the parties. We cannot tell from the record whether or not one or more creditors are involved. We would not hesitate in saying, on this record, upon the conceded facts, that this plaintiff has made out a cause of action for the relief which it demanded in so far as it is concerned.

The judgment should be reversed, accordingly, with costs, and the action remitted to Special Term to take additional proofs in accordance with the arrangement entered into between the respective parties.

MARTIN, P. J., TOWNLEY and CALLAHAN, JJ., concur; DORE, J., dissents.

DORE, J. (dissenting). Plaintiff had the burden of proving facts sufficient to charge the bank with knowledge of the trust character of the funds. The trial court, who saw and observed the witness, reached the conclusion that there was " a total failure of proof by the plaintiff in all essential and vital elements necessary to be established to warrant a recovery. Its case rests on conjecture and surmise." (174 Misc. 206, 209.)

In *Barclay* v. *Corn Exchange Bank Trust Co.* (155 Misc. 684; affd., 243 App. Div. 692; affd., 267 N. Y. 630) essentially the same issues were presented. In that case, on July 21, 1933, the contractor owed the bank on unpaid notes upwards of $93,000 and the bank knew the contractor had financial difficulties and that he worked for the State and other public authorities. When the bank, on July twenty-first, learned the contractor had made an assignment for the benefit of creditors, it paid itself the balance of the proceeds of the check issued by the State of New York to the order of the contractor. The plaintiff claimed the proceeds were trust funds diverted by the bank in violation of section 25-a of the Lien Law. As indicated in the case on appeal before this court, the issue presented was whether the plaintiff sustained the burden of proof to establish facts sufficient to charge the bank with knowledge. There, as here, an antecedent personal indebtedness of the contractor to the bank was paid out of the funds that were the proceeds of a check paid to a contractor for a public improvement. This court, by a divided court, affirmed the judgment in favor of the defendant bank, dismissing the complaint upon the merits, and was affirmed by the Court of Appeals without opinion. We think the ruling in the *Barclay* case is here controlling.

A similar conclusion has been reached by the Second Department in *Vulcan Rail & Construction Co., Inc.*, v. *County of Westchester* (250 App. Div. 212) on appeal from a judgment entered on the report of an official referee. In that case, also, the bank had applied

the proceeds of a check to a contractor for a public improvement in payment of the contractor's debt to the bank. The facts occurred before enactment of section 25-a but after the enactment of section 36-a of the Lien Law, which plaintiff contended applied to public as well as private improvements. The Second Department said: " The dismissal of the claims against the bank was also correct for another reason. Even if section 36-a did apply, it imposes a trust upon the fund only ' in the hands of such Contractor.' The bank would not be liable unless it participated knowingly in a diversion of the fund. The official referee found, upon ample evidence, that the bank had no knowledge of any claims on the part of laborers, materialmen or others mentioned in the statute. Consequently it had no knowledge that the moneys received from the county were trust funds, and it could not have been aware of any misappropriation. In such circumstances, there is no liability on the part of the bank. (*Clarke* v. *Public Nat. Bank & Trust Co.*, 259 N. Y. 285.) "

Section 25-a is penal in nature and punitive in character. By its terms it places responsibility for disposal of the funds on the contractor who, of course, knows whether his materialmen and others have been paid, unless by notice it is brought home to the bank that the contractor has not paid materialmen and laborers.

There is no such thing as a trust without a beneficiary. If materialmen and subcontractors, etc., were paid, there would be no trust fund in the proceeds of the checks, for there would be no beneficiaries thereof. The onerous burden the majority opinion places on banks should not be imposed unless the knowledge necessary for the liability is established by clear and convincing evidence.

The judgment dismissing the complaint should be affirmed.

Judgment dismissing the complaint on the merits reversed, with costs. All findings inconsistent with this determination should be reversed and such new findings made of facts proved on the trial as are necessary to sustain the judgment hereby awarded. Thereupon the action will be remitted to Special Term to take additional proofs in accordance with the arrangement entered into between the respective parties. Settle order on notice.