THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* LUTHER B. GILLETTE, Defendant.

County Court, Jefferson County, December 11, 1941.

*Roy A. Fuller, Assistant District Attorney,* for the plaintiff.

*Melvin F. Kinkley* and *Edgar V. Bloodough,* for the defendant.

DONALDSON, J. The defendant, Luther B. Gillette, has been convicted by a jury of the crime of grand larceny in the first degree arising out of the alleged violation of section 36-a of the Lien Law of the State of New York. This motion to set aside the verdict and for a new trial is based upon the claim of the defendant that no crime has been proven.

The evidence produced by the prosecution establishes the following facts: The defendant entered into a contract with Kermit Searles and his wife, Ellen Searles, to build an addition to their premises located in the town of Watertown, Jefferson county, N. Y., and known as the Circle Inn. The defendant talked with

Mr. Franklin Waite, the proprietor of the O. D. Greene Lumber Company, of Adams, N. Y., with reference to furnishing material for the work, after which the lumber company delivered the material to the Circle Inn, and it was used under the direction of the defendant in performance of the contract that he made with Mr. and Mrs. Searles.

The contract price was not established on the trial, but it did appear that Mr. and Mrs. Searles made the following payments to the defendant, viz.: May 18, 1940, $100; May 25, 1940, $200; June 1, 1940, $75; June 8, 1940, $100; June 15, 1940, $100; June 15, 1940, $30; June 22, 1940, $35; June 28, 1940, $328.

The amount of the lumber company's bill was $564, no part of which has ever been paid. It appears that the check of May twenty-fifth in the amount of $200 was cashed by the defendant at the Northern New York Trust Company, of Watertown, N. Y. The check of June eighth was cashed by Mr. Searles. The check of June fifteenth in the amount of $30 was indorsed by the defendant and delivered to his brother Winifred Gillette. The checks of May eighteenth, June first, June fifteenth and June twenty-eighth, totaling $603, were indorsed by the defendant and delivered to one Herbert D. Holman. The check of June twenty-second in the amount of $35 was indorsed by the defendant and delivered to one Sam Tubilino. It was proven that neither Mr. Holman nor Mr. Tubilino had anything to do with the Circle Inn job. Although the lumber company had other dealings with the defendant, it carried the account in question as a separate account on its books.

The defendant contends that, inasmuch as no lien was filed by the lumber company, the funds received by the defendant did not become trust funds and relies on the decision of the Appellate Division, Second Department, in *New York Trap Rock Corp.* v. *National Bank of Far Rockaway* (260 App. Div. 1035), in which the court, in construing section 25-a of the Lien Law, states in part: " The funds received by a contractor do not acquire the character of trust funds unless and until a lien is filed while the funds are in the contractor's hands."

Section 36-a of the Lien Law provides as follows: " The funds received by a contractor from an owner for the improvement of real property are hereby declared to constitute trust funds in the hands of such contractor to be applied first to the payment of claims of subcontractors, architects, engineers, surveyors, laborers and materialmen arising out of the improvement, and to the payment of premiums on surety bond or bonds filed and premiums on insurance accruing during the making of the improvement and any contractor and any officer, director or agent of any contractor

who applies or consents to the application of such funds for any other purpose and fails to pay the claims hereinbefore mentioned is guilty of larceny and punishable as provided in section thirteen hundred and two of the Penal Law."

A literal construction of the statute would indicate that the funds received by this defendant were trust funds to be applied by him for the payment of claims of laborers and materialmen arising out of the improvement of the Circle Inn. If the construction placed upon the statute in the *New York Trap Rock Corp.* case (*supra*), applies here, the contention of the defendant must be sustained.

It seems to me that the Legislature, in enacting this statute, intended to protect the claims of those claimants specified in the statute *who had not filed liens.* The statute contains the words " claims " and " premiums." The word " lien " is not used. If the filing of a lien is necessary before the provisions of this statute can be invoked, then the protection afforded those having claims for premiums on surety bonds and premiums on insurance accruing during the making of the improvement could never be protected under the statute for the reason that such claimants are not entitled to a lien. (*Matter of O'Rourke, Inc.*, 152 Misc. 575; *Continental Casualty Co.* v. *Ben-Mil, Inc.*, 175 id. 220.)

Upon what theory can this defendant avoid the consequences of the statute by reason of the failure of the lumber company to file a lien? The owners had paid the defendant in full. The defendant urges that the filing of a lien is necessary in order to give notice to the defendant of the lumber company's claim. It would seem that this contention is without foundation for the defendant well knew that he was indebted to the lumber company for the material furnished, and he had promised and agreed to pay for the same when he received the money from the owners. I do not believe that the party whose misappropriation the statute was intended to prevent can escape the provisions of the statute by any such construction thereof. The statute is penal in nature and prescribes punishment for those who violate it. It places the responsibility for the disposal of the funds on the contractor whose duty it is to know whether or not his materialmen and the other people mentioned in the statute have been paid.

Since the argument of this motion, I have discovered that the *New York Trap Rock Corp.* case (*supra*), relied upon by the defendant, has been passed on by the Court of Appeals (285 N. Y. 825). This case involved the construction of section 25-a of the Lien Law relating to public improvements, but I assume the construction of the penal nature of each of the statutes would be the same.

The Court of Appeals has affirmed the Appellate Division in the following language: " We agree that *regardless of the construction of the scope and effect of section 25-a of the Lien Law,* no action at law can be brought by a single creditor. The determination of the construction and effect of section 25-a must await a case in which such question is necessarily presented." (Italics supplied.) It is quite apparent that the Court of Appeals intentionally avoided approval of the statement made by the Appellate Division as to the construction placed upon that statute by the Court of Appeals in *Amiesite Construction Corp.* v. *Luciano Contracting & Building Co., Inc.* (284 N. Y. 223). It seems to me that, if the Court of Appeals was prepared to agree with that construction, there would have been no need for making any reference to it in affirming the case on another ground.

At about the same time that the Second Department decided the *New York Trap Rock Corp.* case (*supra*) the First Department decided *Raymond Concrete Pile Co.* v. *Federation Bank & Trust Co.* (261 App. Div. 25). No mention is made in the latter decision concerning the filing of a lien.

By reason of the decision of the First Department in the *Raymond Concrete Pile Co.* case (*supra*) and of the Court of Appeals in the *New York Trap Rock Corp.* case (*supra*) and also by reason of the fact that the *New York Trap Rock Corp.* case was a civil case not involving the penal responsibility of a contractor, under section 36-a of the Lien Law, I feel that the decision of the Second Department should not be applied to this case. I hold now, as I did on the trial, that this defendant received the funds from the owners in trust to be applied by him in payment of the claims specified in the statute.

The defendant further urges that even if the funds received by the defendant were trust funds, yet the People had the burden of proving and failed to prove that they were not applied for the purpose of paying the claims specified in the statute. He points out that there is no evidence that the lumber company had an examination of the contractor's books pursuant to the provisions of section 36-e of the Lien Law, and, therefore, the presumption contained in that section cannot be invoked in this case. The court agrees with the defendant's contention in this regard.

The defendant, in all criminal cases, is presumed to be innocent, and proof of facts by the prosecution by means of a statutory legal presumption is not the most desirable type of proof. However, the prosecution did not rely on this presumption but offered proof to the effect that the defendant admitted to Mr. Waite that he had used the money for other purposes. This proof, standing

alone, would probably be insufficient to establish the fact that the funds were not used for the payment of some other claims arising out of the improvement of the Circle Inn, but the defendant's counsel brought out on cross-examination that neither Mr. Helman nor Mr. Tubilino, who received checks paid by the owners to the defendant in the amount of $603, had anything to do with this contract or with the Circle Inn job. In my opinion this testimony, undisputed, furnished ample proof that the defendant applied at least the amount of $603 for purposes other than those specified in section 36-a. The defendant was not sworn and offered no evidence.

In my opinion the guilt of the defendant was established beyond a reasonable doubt. This motion is denied.