SEBRING, Justice.
The Board of Public Instruction of Okaloosa County, Florida, entered into two separate construction contracts with Pennington Construction Company for the erection of additions at the Baker School and Laurel Hill School, respectively. The appellant, Pan American Surety Company, became surety for the performance of these contracts.
In pursuance of the contracts the contractor dug some foundation trenches at the Laurel Hill site and placed building materials on the ground at both jobs. Approximately 30 days after the contracts were executed the architect issued in favor of the contractor two separate certificates for progress payments on the respective jobs, pursuant to a provision in the contracts which provided: “The Owner' shall make payments on account of the contract, upon requisition by the Contractor, as follows: On or about the first day of each month the contractor shall issue to the Architect a breakdown of labor and materials complete and or stored on the job site. The Architect shall after checking same, issue to the Contractor a certificate in the amount due less ten percent, said ten percent being withheld until final inspection and approval by the State Dept. of Education.” On the faith of these certificates the Board paid the amounts stated therein to the contractor. After receiving the progress payments the contractor abandoned both projects.
The appellant thereupon engaged a contractor to complete the construction and then filed suit for a declaratory decree to determine whether all or any part of the initial progress payments made to the defaulting contractor had been improperly paid by the Board, and for reinbursenient for any resulting loss. The parties went to trial on the issue as to whether or not the architect’s “certificate of payment and statement of account” on each project was “improperly issued by the defendant’s architect and accepted and acted upon by the defendant [Board] in violation of the terms of said construction contracts in that the work completed and materials on the sites were not of the percentage and quantities of value certified to, which would clearly appear from any inspection, and none of the materials had been paid for by the contractor.” At final hearing on complaint, answer and testimony, the trial court found “that the plaintiff [had]failed to sustain by the requisite degree of proof its allegation that the architect’s *870 certificates were without proper basis and that the payments pursuant thereto were wrongful,” and dismissed the suit at the cost of the plaintiff.
As appears from the record in the cause the disputed amounts included in the progress payments were for insurance and bond premiums, temporary buildings and layout, and materials stored on the job sites.
The contracts under which the projects were begun contained the following provision: “Article 18. The Architect’s Status — The Architect shall have general supervision of the work. He has authority to stop the work if necessary to insure its proper execution. He shall certify to the Owner when payments under the contracts are due. * * * He shall make decisions on all claims of the Owner or Contractor. All of his decisions are subject to arbitration.”
It seems to us. that under such a provision defining the relationship of the architect with the Board and the general contractor, the Board, in the absence of fraud, collusion, or other such consideration, was entitled to rely upon the “certificate of payment and statement of account” submitted by the architect and make payments thereunder, as to items that could be fairly said to be within the term “labor and materials complete and or stored on the job site,” but not as to items that were not fairly comprehended within the term. When viewed in this aspect, it is impossible to say that the entire amount of the insurance and bond premiums should have been included in the first progress payment, when, as the record shows, no actual construction work had been done at one of the job sites and, as to the other, only some foundation trenches had been dug, and consequently, no bond or insurance premiums had been earned. City of Pittsburgh to Use of H. M. Kamin Agency v. Parkview Construction Co., 344 Pa. 126, 23 A.2d 847; Travelers’ Ins. Co. v. Village of Ilion, 126 Misc. 275, 213 N.Y.S. 206; Bay State Dredging & Contracting Co. v. W. H. Ellis & Son Co., 235 Mass. 263, 126 N.E. 468, 473; Employers’ Liability Assurance Corporation v. Cannon, 173 Okl. 493, 49 P.2d 103; annotation, 102 A.L.R. 135.
Another item that would seem to fall in the same category is the item styled “temporary buildings.” According to the record the “temporary buildings” for each job site were nothing more than portable structures for the convenience of the contractor in storing tools and certain materials that should not be exposed to the weather. They were structures that could be, and are, moved from job site to job site by the contractor and are never incorporated in the work to be done under any particular contract. In the determination of whether or not any particular article brought to the job constitutes “materials complete and or stored on the job site” we think the test to be applied is, that “ * * * if given articles are of such nature or type that they must necessarily be consumed in prosecuting the work and thus lose their identity in the finished product, then such articles must be classified as materials, otherwise as a part of the instrumentalities, tools, implements, and equipment of the contractor.” Jenkins Hardware Co. v. Globe Indemnity Co., 205 N.C. 185, 170 S.E. 643, 645; Bay State Dredging & Contracting Co. v. W. H. Ellis & Son Co., supra. Under this definition the amounts paid for “temporary buildings” were not paid for an allowable item.
It is impossible to determine from the record whether or not the item listed as “layout” was for the layout of the temporary building or for the contemplated structure. Inasmuch as the duty rested on the plaintiff to establish the nature of the items for which payments were allegedly improperly paid, and it has failed to do so in respect to this particular item, we will assume that the item “layout” was meant to mean layout of the contemplated structure, and upon such assumption will hold that the item was properly payable. For as we understand the term “layout,” when used in connection with the construction of a building, it includes the act of surveying the building site for the purpose of establishing grade levels ánd locating *871 the corners and building lines so that the building can be constructed in accordance with the plans and specifications. While such work is preliminary in nature it nevertheless is indispensable to the proper completion of the structure, and, as such, is fairly comprehended within the term “labor and materials.” See Feagins v. Wallowa County, 62 Or. 186, 123 P. 902; R. G. Packard Co. v. City of N. Y., 151 App.Div. 941, 137 N.Y.S. 9.
The last item for which reimbursement is claimed was listed as materials “stored on job site.” The appellant objects to the allowance of this item on the ground that the contracts provided for progress payments to the extent of 90 per cent of the contracts based on “labor and materials complete and or stored on the job site” (although the payment actually made was calculated on an 80 per cent basis), whereas the specifications provided for progress payments on the basis of “material and labor used on this project;” that the contracts were at variance with the controlling statute dealing with the construction of public school buildings, which limits progress payments to eighty per cent of the amount due on the contracts on the basis of the work completed; and that the appellant suffered loss because the stored materials were not paid for by the defaulting contractor. Section 235.33, Florida Statutes 1951, F.S.A.
While all of this may be true, it cannot be overlooked that the appellant became surety for the performance of the contracts on the basis of the contracts as written, permitting progress payments for materials as herein authorized without reference to statutory or other restrictions. Under these circumstances, we cannot be persuaded that it can evade responsibility for the performance thereof, even if it be conceded that the contracts were not within the strict limitations imposed by the statute. Columbia Casualty Co. v. Barry, 111 Fla. 517, 149 So. 567; 72 C.J.S., Principal and Surety, § 37, p. 530. Cf. 72 C.J.S., Principal and Surety, § 133, p. 623, for the rule applicable where statutory restrictions are in addition rather than contrary to contractual provisions.
It is conceded by the appellant that the amounts expended for “excavating and fill” were proper expenditures, with which we agree, and consequently there is no necessity for further consideration of this item.
The decree appealed from should be affirmed in part and reversed in part with directions that a decree be entered in conformance with this opinion.
It is so ordered.
MATHEWS, C. J., and ROBERTS and DREW, JJ., concur.